No. 26-4519

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

STATE HABEAS COUNSEL, et. al,

Respondent/Appellee,

v.

DANIELLE JEANETTE WOOD,

Petitioner/Appellant.

---

On Appeal from the United States District Court
District of Montana, Missoula Division
The Honorable Brian M. Morris
Cause No. 9:25-cv-000201-BMM

---

# APPELLANT'S OPENING BRIEF

---

Shandor S. Badaruddin
SHANDOR S. BADARUDDIN, PC
736 South Third Street West
Missoula, Montana 59801
(406) 728-6868
shandor@shandorlaw.com
tricia@shandorlaw.com

*Attorney for Appellant Danielle Wood*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iv

I. INTRODUCTION ..... 1

II. JURISDICTIONAL STATEMENT ..... 3

III. ISSUE PRESENTED ..... 3

IV. STATEMENT OF THE CASE ..... 4

a. Procedural History. ..... 4

b. Facts Relevant to the Issues Presented for Review and Identification of Relevant Rulings Below. ..... 5

1. The First Trial. ..... 5

2. *Wood I:* The Appeal and Resulting Acquittal. ..... 9

3. Wood's Motion to Dismiss, *Wood II*, and the Exhaustion of State Remedies. ..... 10

4. Proceedings in the U.S. District Court Below, (*Wood III*). ..... 11

5. No Second Amended Information. ..... 12

V. SUMMARY OF THE ARGUMENT ..... 14

VI. ARGUMENT ..... 15

a. Standard of Review. ..... 15

b. Abstention was and Still is not Appropriate. ..... 16

c. Wood Exhausted her State Court Remedies. ..... 16

d. Jeopardy Attached and Terminated. .................................................. 17

1. The Double Jeopardy Clause and the Interest It Protects. ...... 17

2. Jeopardy Attached When the Jury was Empaneled and Sworn. .......................................................................... 18

3. Jeopardy Terminated: *Wood I* was an Acquittal as a Matter of Federal Law. ........................................................ 18

i. The State may not Parse the Acquittal, Because There is no Verdict to Reinstate. ................................. 21

4. Jeopardy Also Terminated When the Jury was Discharged Without an Express Verdict and Without Wood's Consent. .................................................................... 24

e. The Acquittal and the Proposed Retrial are for the Same Offense. .. 25

1. *Dixon* Foreclosed any Test Beyond the Same-Elements Test. 26

2. *Blockburger* Applies Only Where one Transaction Violates two Distinct Statutory Provisions. ......................................... 26

3. Keen Does not Distinguish this Case; It Supports Wood. ...... 28

4. *Sanabria* Holds the Legislature not the Prosecutor, Fixes the Unit of Prosecution. ................................................ 30

f. Montana Defines One Offense and the State Agrees. ....................... 32

1. The U.S. District Court Misunderstood the Elements of Accountability Under Montana Law. ................................ 36

2. The Montana Legislature's Intent to Create a Single Offense is Clear. ...................................................................... 38

3. The Charging Document Confirms a Single Offense. ............ 39

4. *Garrett* and *Barrett* Confirm, *Blockburger* Governs and is Satisfied. .......... 40

g. The Alternative-Means Principle has no Basis in Federal Law. .......... 43

1. The Two Grounds of the Order Below Cannot Both be Correct. .......... 43

2. *Ramos* is a State Law Construct and Cannot be Reconciled with *Sanabria.* .......... 44

3. This Court Reads *Sanabria* as Wood Does. .......... 45

4. The Montana Supreme Court's "Elements Plus Collateral-Estoppel" Test Rests on *Sanabria Dicta.* .......... 47

5. The Alternative-Means Principle Cannot be Squared With the Breadth of the Acquittal Rule. .......... 48

h. The State Engineered the Ambiguity it now Seeks to Exploit. .......... 49

i. Retrial Would not Serve the Interests Identified in *Tateo.* .......... 53

VII. CONCLUSION .......... 54

## TABLE OF AUTHORITIES

### Cases

*Albernaz v. United States*, 450 U.S. 333 (1981) .................................................... 38

*Arizona v. Rumsey*, 467 U.S. 203 (1984) ............................................................ 22

*Arizona v. Washington,* 434 U.S. 497(1978 ........................................................ 17

*Ashe v. Swenson*, 397 U.S. 436 (1970) ............................................................... 47

*Barrett v. United States*, 607 U.S. 128 (2026) .................................................. 40-43

*Bello-Reyes v. Gaynor*, 985 F.3d 696 (9th Cir. 2021) .......................................... 16

*Benton v. Maryland,* 395 U.S. 784 (1969) ........................................................... 17

*Blockburger v. United States*,
284 U.S. 299 (1932) .......................................... 12, 14, 26-27, 30, 36-38, 40-44, 48

*Burks v. United States*, 437 U.S. 1 (1978) ............................................ 2, 19, 23, 54

*Crist v. Bretz,* 437 U.S. 28 (1978) ........................................................... 17, 18, 25

*Currier v. Virginia,* 585 U.S. 493 (2018) ............................................................ 52

*Denezpi v. United States*, 596 U.S. 591 (2022) ..................................................... 25

*Dominguez v. Kernan*, 906 F.3d 1127 (9th Cir. 2018) .......................................... 16

*Downum v. United States,* 372 U.S. 734 (1963) ............................................. 17, 18

*Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir. 1982) ............................... 35

*Evans v. Michigan*, 568 U.S. 313 (2013) ............................................ 14, 18-19, 48-49

*Fong Foo v. United States,* 369 U.S. 141 (1962) ............................................ 18, 49

*Garrett v. United States,* 471 U.S. 773 (1985) ............................................... 40, 41

*Gouveia v. Espinda*, 926 F.3d 1102 (9th Cir. 2019) .............................................. 16

*Green v. United States*, 355 U.S. 184 (1957) ....................................................... 24

*Hamling v. United States,* 418 U.S. 87 (1974) ............................................... 39, 40

*Harrison v. Gillespie*, 640 F.3d 888 (9th Cir. 2011) .............................................. 16

*Illinois v. Somerville*, 410 U.S. 458 (1973) .......................................................... 19

*Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294 (1984) ...................... 23

*Lockhart v. Nelson,* 488 U.S. 33 (1988) .............................................................. 21

*Mannes v. Gillespie*, 967 F.2d 1310 (9th Cir. 1992) ............................................ 16

*McElrath v. Georgia*, 601 U.S. 87 (2024) ........................................................... 19

*Missouri v. Hunter*, 459 U.S. 359 (1983) ............................................................ 27

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ................................................... 35

*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022) ............................................... 47

*Richardson v. United States*, 468 U.S. 317 (1984) ............................................... 23

*Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) ............................................... 12, 16

*Sanabria v. United States*,
437 U.S. 54 (1978) ........................................ 2, 12, 14-15, 18-19, 28-32, 39, 44-49

*Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir. 1988) ............................................. 24

*Smalis v. Pennsylvania*, 476 U.S. 140 (1986) ...................................................... 22

*Smith v. Massachusetts*, 543 U.S. 462 (2005) ...................................................... 22

*State v. Dobrowski*, 2016 MT 261 ........................................................................ 33

*State v. Gollehon,* 864 P.2d 249 (1993) ............................................................... 37

*State v. Granby,* 939 P.2d 1006 (1997) .................................................................. 8

*State v. Hagen*, 939 P.2d 994 (1997) ...................................................................... 8

*State v. Pinegree*, 2015 MT 187, 352P.3d 1086 ................................................... 34

*State v. Ramos,* 184 P.3d 1256 (2008) ............................................... 11, 15, 43-45

*State v. Tellegen*, 2013 MT 337 .............................................................................. 33

*State v. Tower*, 881 P.2d 1317 (1994) ...................................................... 33, 40, 42

*State v. Wilson,* 2007 MT 327 ................................................................................ 39

*State v. Wood (Wood I),*
2024 MT 318 ..................... 4, 9-10, 13-14, 18, 20, 29, 30, 32, 33, 35-36, 44, 48, 50

*State v. Wright*, 203 P.3d 1027 (2009) ........................................................... 46, 52

*Stow v. Murashige*, 389 F.3d 880 (9th Cir. 2004) ............................................. 3, 15

*Terry v. Potter*, 111 F.3d 454 (6th Cir. 1997) ........................................... 24, 25, 39

*Tibbs v. Florida,* 457 U.S. 31 (1982) ...................................................................... 21

*United States v. Ball,* 163 U.S. 662 (1896) ...................................................... 17, 18

*United States v. Buckley,* 689 F.2d 893 (9th Cir. 1982) ........................................ 39

*United States v. Chica*, 14 F.3d 1527 (11th Cir. 1994) .......................................... 17

*United States v. Dixon,* 509 U.S. 688 (1993) ............................ 2, 15, 26, 39, 42, 48

*United States v. Foumai*, 910 F.2d 617 (9th Cir. 1990) ......................................... 21

*United States v. Garcia-Paz*, 282 F.3d 1212 (9th Cir. 2002) ................................ 22

*United States v. Garcia*, 938 F.2d 12 (2nd Cir. 1991) ...................................... 51-53

*United States v. Hickey*, 367 F.3d 888 (9th Cir. 2004) .......................................... 27

*United States v. James*, 109 F.3d 597 (9th Cir. 1997) ........................................... 23

*United States v. Jimenez Recio*, 371 F.3d 1093 (9th Cir. 2004) ....................... 19, 21

*United States v. Johnson*, 229 F.3d 891 (9th Cir. 2000) ........................................ 21

*United States v. Jose*, 425 F.3d 1237 (9th Cir. 2005) ............................................ 19

*United States v. Keen*, 104 F.3d 1111 (9th Cir. 1996) ......................................28-30

*United States v. Martin Linen Supply Co.,* 430 U.S. 564 (1977) ................ 18, 48-49

*United States v. Martinez*, 122 F.3d 1161 (9th Cir. 1997) ..................................... 21

*United States v. McCaskey*, 9 F.3d 368 (5th Cir. 1993) ........................................ 35

*United States v. McIntosh*, 23 F.3d 1454 (8th Cir. 1994) ...................................... 23

*United States v. Myers,* 804 F.3d 1246 (9th Cir. 2015) .......................................... 51

*United States v. Overton,* 573 F.3d 679 (9th Cir. 2009) ........................................ 38

*United States v. Reyes-Alvarado,* 963 F.2d 1184 (9th Cir. 1992) ........................... 51

*United States v. Tateo,* 377 U.S. 463 (1964) .................................................. 53, 54

*United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218 (1952) ................... 29

*United States v. Wilson*, 420 U.S. 332 (1975) ................................................ 21, 22

*Williams v. Warden*, 422 F.3d 1006 (9th Cir. 2005) .........................................45-47

*Wilson v. Belleque*, 554 F.3d 816 (9th Cir. 2009) ............................................... 3, 15

*Witte v. United States,* 515 U.S. 389 (1995) ........................................................ 17

*Wood v. Mercer (Wood II),*
2025 MT 163 ..........................................5, 10-11, 14-15, 29, 32, 44-45, 47-48, 53

*Younger v. Harris*, 401 U.S. 37 (1971) ........................................................... 12, 16

*Zavala v. Ives*, 785 F.3d 367 (9th Cir. 2015) .......................................................... 16

**Statutes**

45-2-301, MCA ....................................................................... 6, 7, 14, 27, 29, 35, 37

45-2-302, MCA ................................................................................................. 7, 9, 37

45-5-303, MCA ....................................................................................................... 9

45-5-102, MCA ...................................2-4, 6, 9, 14, 23-24, 27-29, 32, 38-39, 41-43

28 U.S.C. § 1291 ..................................................................................................... 3

28 U.S.C. § 2241 ..........................................................2, 3, 5, 12, 15-16, 35, 54

28 U.S.C. § 2253 ..................................................................................................... 3

**Rules**

Fed.R.App.P. 4(a)(1)(A) ......................................................................................... 3

**Other Authorities**

Mont. Const. Art. II, § 20(1) .................................................................................. 5

Fifth Amendment, United States Constitution ....................... 1, 3, 11, 17, 22, 26, 45

Fourteenth Amendment, United States Constitution ........................................... 17

## I. INTRODUCTION.

Appellant Danielle Jeanette Wood was tried in a Montana state court before a jury on a single count of deliberate homicide. In that single count, the State of Montana alleged Wood was guilty on two alternative theories: direct liability, (she killed the victim), and accountability liability, (some third person for whose actions she was accountable killed the victim). The State argued both theories in closing. The State objected to Wood's request for a specific unanimity instruction addressing both theories and to Wood's proposed special verdict form identifying each theory. The trial court gave a general unanimity instruction and a general verdict form consisting of two choices, guilty or not guilty to deliberate homicide. The jury returned a verdict of guilty and a judgment of conviction was entered against Wood for one single count of deliberate homicide.

The Montana Supreme Court reversed, holding there was insufficient evidence, or rather, no evidence, Wood committed the offense by virtue of an accountability theory and the accountability theory should never have been submitted to the jury. On remand, Wood moved to dismiss on the ground the Fifth Amendment's Double Jeopardy Clause barred retrial because of the acquittal on appeal. The trial court denied the motion. The Montana Supreme Court granted an interlocutory appeal (supervisory control), and agreed Wood had been acquitted of deliberate homicide by accountability, but held she could nonetheless be retried on

the direct-liability theory under what it called the "alternative means principle." Wood filed a petition pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of Montana. The district court denied Wood's petition, but granted a certificate of appealability.

This appeal presents a single question with a single answer. Wood was charged with one offense, deliberate homicide, defined by one statute, 45-5-102(1)(a), MCA. An appellate court has held the State's proof insufficient. Under *Burks v. United States*, 437 U.S. 1 (1978), and *Sanabria v. United States*, 437 U.S. 54 (1978), that ruling is an acquittal, and the State may not divide the offense into multiple theories in order to conduct separate trials on the surviving fragments. The alternative-means principle on which both courts below relied is a creature of Washington state law that has never been adopted by this Court, or any federal court, and it cannot be reconciled with *Sanabria*, and cannot survive *United States v. Dixon*, 509 U.S. 688 (1993).

Wood's retrial is set to begin on March 19, 2027. Wood seeks a decision by this Court prior to that date.

## II. JURISDICTIONAL STATEMENT.

### a. Subject Matter Jurisdiction in the District Court.

Wood filed a petition pursuant to 28 U.S.C. § 2241. The district court had jurisdiction pursuant to 28 U.S.C. § 2241. *Stow v. Murashige*, 389 F.3d 880, 885-87 (9th Cir. 2004); *Wilson v. Belleque*, 554 F.3d 816, 821 (9th Cir. 2009).

### b. Subject Matter Jurisdiction in the Court of Appeals.

The district court entered final judgment on June 25, 2026. 1-ER-2. Pursuant to 28 U.S.C. § 2253(c), the district court also issued a certificate of appealability. 1-ER-26-27. Wood filed her Notice of Appeal less than thirty days later on July 15, 2026. 2-ER-94-95. Her notice was timely pursuant to Fed. R. App. P. 4(a)(1)(A).

This is an appeal from a final judgment in a habeas corpus proceeding in which the district court issued a certificate of appealability pursuant to 28 U.S.C. § 2253, and over which this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III. ISSUE PRESENTED.

Whether the Double Jeopardy Clause of the Fifth Amendment bars the State of Montana from retrying Wood for deliberate homicide as defined by 45-5-102(1)(a), MCA, after the Montana Supreme Court held the State's proof insufficient to establish criminal liability for that offense.

**Preservability of Review:** This issue was raised and ruled upon as follows: Wood raised this claim, and only this claim, in her Petition (2-ER-225-27, ¶6), and

in her Memorandum (2-ER-171-220). The district court ruled on the claim (1-ER-12-26, Section IV) and denied the Petition but issued a certificate of appealability.

## IV. STATEMENT OF THE CASE.

### a. Procedural History.

Wood was charged by Information in the Montana Twentieth Judicial District, Sanders County, with one and only one solitary count of deliberate homicide, in violation of 45-5-102(1)(a), MCA. 5-ER-1072-74. Wood was subsequently charged with the same offense, and only one count of the same, in an Amended Information. 5-ER-1036-38.

Trial commenced on the solitary charge alleged in the Amended Information on January 14, 2021, and a jury was empaneled and sworn. 5-ER-990-1009, TTx 949:7-950:18. The jury returned a single verdict of guilty, (4-ER-956, and judgment was entered against her (4-ER-951-52). Wood appealed to the Montana Supreme Court, which reversed the conviction and remanded for a new trial "in the State's discretion." (1-ER-79); *State v. Wood*, 2024 MT 318, ¶ 53 (*Wood I*).

Prior to the commencement of a second trial, Wood moved to dismiss pursuant to the Double Jeopardy Clause.[1] 4-ER-858-72. *See Also*, *Wood v. Mercer,*

[1] Wood asserted additional grounds not presented in her federal petition below and not presented in this Appeal.

2025 MT 163,[2] at ¶6. The Montana Twentieth Judicial District Court denied the motion. 4-ER-806-08.

Wood applied to the Montana Supreme Court for a writ of supervisory control.[3] 1-ER-29, ¶1. The Montana Supreme Court granted the writ, reviewed the claim on the merits, but affirmed the denial of the motion to dismiss and remanded for retrial. *Wood II,* 1-ER-38-39, ¶¶ 22-25.

Wood subsequently filed a petition pursuant to 28 U.S.C. § 2241 in the U.S. District Court for Montana. 2-ER-221-247. The Petition was denied, and a certificate of appealability was granted. 1-ER-26-27. Wood filed a timely notice of appeal.

**b. Facts Relevant to the Issues Presented for Review and Identification of Relevant Rulings Below.**

**1. The First Trial.**

In Montana, the Constitution authorizes a criminal prosecution in a Montana district court to be initiated by Information or Indictment. Mont. Const. Art. II, § 20(1). If the prosecution is by Information, leave must be granted by the district court after examination (probable cause). *Id*. The State filed a Motion for Leave to

---

[2] Also referred to as *Wood II,* Opinion found at 1-ER-28-39.

[3] In Montana, a writ of supervisory control is the method approved by the Montana Supreme Court for challenging a trial court's denial of a motion to dismiss on double jeopardy grounds. 1-ER-28-39, ¶¶8-9.

File an Information and Affidavit in Support (5-ER-1077-89), and the Montana Twentieth Judicial District Court granted the motion. (5-ER-1075-76).

The original Information charged Wood with one count of deliberate homicide in violation 45-5-102(1)(a), MCA, by purposely or knowingly causing the death of Matthew LaFriniere by shooting him with a firearm. 5-ER-1072.

The Montana Supreme Court found the original Information "charged [Wood] with straight deliberate homicide" or "direct deliberate homicide." 1-ER-44-45, ¶¶9-10. These terms are not in deliberate homicide statute, 45-5-102(1)(a), MCA, or any other Montana statute. On June 26, 2020, the prosecution moved for leave to file an Amended Information. 5-ER-1059-71. The Montana Supreme Court found "the amended charging affidavit was no more than a verbatim restatement of the factual assertions set forth in support of the original straight or direct deliberate homicide charge." 1-ER-45, ¶10. The prosecution's stated purpose was "'to make clear that the State [was] also relying on … accountability as stated in' §§ 45-2-301 and -302, MCA, thus giving Wood 'specific notice' of its alternative accountability theory." 1-ER-44, ¶9; 5-ER-1059. The State was clear, "[t]he State is not required to give specific notice of [its] accountability theory.[4]" 5-ER-1059.

---

[4] As Wood argues throughout, the State was correct, it did not need to give specific notice of its accountability theory because deliberate homicide by accountability is not a separate independent offense from deliberate homicide or deliberate homicide by direct liability. They are all one and the same offense, called deliberate homicide, as defined by one statute, 45-5-102(1)(a), MCA.

Wood objected to the Motion for Leave to File Amended Information because the prosecution (1) alleged no new facts beyond those asserted in the original affidavit accusing her of personally shooting and killing LaFriniere; (2) had provided no additional discovery to support the alternative theory; and (3) advanced inconsistent theories, given the complete absence of evidence that someone other than Wood, for whom Wood was accountable, had killed LaFriniere. 5-ER-1047-58; 1-ER-46, ¶11.

The State asserted its alternative theories were not inconsistent because "Montana law makes no distinction between the principal or accessory of a crime."[5] 5-ER-1045; 1-ER-46, ¶11. The Montana Twentieth Judicial District Court granted the motion without elaboration, "upon cursorily 'finding probable cause to believe that' Wood 'committed the alleged offense.'" 1-ER-46, ¶11; 5-ER-1039.

The Amended Information charged Wood with committing the offense of "Deliberate homicide by purposely or knowingly causing the death of Matthew LaFriniere by … shooting him with a firearm or being legally accountable for the commission of the offense … (See Mont. Code Ann. §§ 45-2-301 and 45-2-302.)" 5-ER-1036; *See Also*, 1-ER-46, ¶11.

Trial commenced on the single charge in the Amended Information on January 14, 2021. 5-ER-990-1009 (Trial Transcript (TTx) Excerpts). The jury was

[5] The State was correct and this is an accurate statement of Montana law.

empaneled and sworn. 5-ER-990-1009, TTx 949:7-950:18. At no time during trial did the State present evidence or argument suggesting some third party shot and killed LaFriniere, or that Wood participated in the killing to some lesser extent alongside a third party who actively participated. 1-ER-59-60, ¶30. Nevertheless, the prosecution argued in closing that the accountability theory was an option upon which the jury could convict Wood. 1-ER-59-60, ¶30 (*quoting* 5-ER-990-1009, TTx 2564:13-2565:9, 2598:15-17, 2633:19-2634:9).

After the prosecution concluded its case-in-chief, Wood moved to dismiss for insufficiency of the evidence,[6] pursuant to Section 46-16-403, MCA, on the single count alleged, deliberate homicide, on all of the prosecution's theories of guilt. 5-ER-990-1009, TTx 2471:10-2475:18; 1-ER-55-56, ¶26. The trial court denied the motion. 5-ER-990-1009, TTx 2475:19-2477:10; 1-ER-55-56, ¶26.

During the settling of instructions, Wood requested a specific unanimity instruction and a conforming verdict form so that the jury's determination on each alternative theory would be clear. 5-ER-990-1009, TTx 2501:21-2503:8; 5-ER-

[6] For the sake of efficiency, the District Court allowed Wood to reserve the right to move for a directed verdict at a time more convenient than immediately after the State rested. 5-ER-990-1009, TTx 2471:4-2471:8. The motion was ultimately made prior to settling instructions. Regardless, under Montana Law, "a defendant is not required to move for an acquittal or for directed verdict in order to preserve the issue of insufficiency of evidence on appeal." *State v. Hagen*, 939 P.2d 994, 997 (1997) citing *State v. Granby,* , 939 P.2d 1006, 1009 (1997). Wood's Motion was timely.

1010-35 (Defendant's Proposed Jury Instructions); 1-ER-57-59, ¶¶28-29. The trial court declined to give the specific unanimity instruction and declined to use the defense-proposed verdict form. 5-ER-990-1009, TTx 2503:9-13, 2503:25. The trial court instead gave a general unanimity instruction, (Given Jury Instructions No. 21, 5-ER-984), and a general verdict form. 4-ER-956; 1-ER-57-58, ¶28.

The jury returned a verdict of guilty on the verdict form's undifferentiated charge of deliberate homicide. 4-ER-956; 1-ER-59-60, ¶30.

**2. *Wood I*: The Appeal and Resulting Acquittal.**

Wood appealed her judgment of conviction to the Montana Supreme Court. 4-ER-953-55. *Wood I* held "accountability to deliberate homicide by aiding or abetting another in the commission of a deliberate homicide as specified in §§ 45-2-302(3) and -303, MCA, is neither a technically separate and distinct 'offense' apart from direct deliberate homicide as defined by § 45-5-102(1)(a), MCA, nor does it require proof of who actually 'struck' the literal or figurative 'fatal blow' as between the alleged *concurrently acting accomplices*." 1-ER-68-69, ¶40. [7] In other words, they are the same offense.

*Wood I* concluded under the circumstances of the case both Montana and federal due process required a special verdict form to determine which theory of guilt was unanimously decided. 1-ER-74-76, ¶¶48-49. It concluded the failure to

[7] Opinion and Order, *State v. Wood*, 2024 MT 318.

provide a special verdict form was prejudicial because "the State presented no evidence or argument at trial even suggesting that some third party shot and killed the decedent LaFriniere, or that Wood actively assisted some other person in the planning or commission of the shooting of LaFriniere, with and in furtherance of their common purpose to cause his death." 1-ER-70-71, ¶42. *Wood I* also concluded the alternative accountability theory should not have been placed before the jury in the first instance (1-ER-76-77, ¶50), and recognized accountability was not presented as a distinct violation of the statute; rather it was presented by the State "as an option if the jury could not unanimously find the State's evidence sufficient to support its primary theory of criminal liability and guilt." *Id. Wood I* reversed the conviction and remanded for a "new trial in the State's discretion." 1-ER-78-79, ¶53.

#### 3. Wood's Motion to Dismiss, *Wood II*, and the Exhaustion of State Remedies.

Prior to the commencement of a second trial, Wood moved to dismiss pursuant to the Double Jeopardy Clause4-ER-858-72; 1-ER-30-31, ¶ 6. After full briefing and oral argument, (*see* April 15, 2025 Transcript of Oral Argument, 4-ER-809-57), the trial court denied the motion. Order Denying Motion to Dismiss, 4-ER-806-808.

Wood sought a writ of supervisory control. 4-ER-721-805. The Montana Supreme Court ordered the State to respond, 4-ER-719-20 and the State did so. 4-ER-697-718. *Wood II* held: "[o]ur reversal of Wood's first conviction amounted to a ruling that the State's proof was insufficient to establish criminal liability for deliberate homicide by accountability." *Wood II*, 1-ER-33-34, ¶14. The court further held Wood could not be retried for deliberate homicide under an accountability theory because to do so would violate her Fifth Amendment protection against double jeopardy. *Id*.

Nevertheless, *Wood II* concluded the Double Jeopardy Clause permits a criminal defendant to be retried "under an alternative theory of guilt after his initial conviction was overturned on appeal," so long as the alternative theory was not also found to lack sufficient evidence. *Wood II,* 1-ER-37, ¶18. According to *Wood II,* this "alternative means principle" — drawn entirely from a decision of the Supreme Court of Washington — stands as an exception to the rule barring retrial of the same offense after acquittal. *Id*.

**4. Proceedings in the U.S. District Court Below, (*Wood III*).**

The district court denied the petition on two independent grounds. First, it adopted the alternative-means principle established in *State v. Ramos*, 184 P.3d 1256 (2008), and held "because jeopardy under the direct liability theory did not terminate, Wood cannot avail herself of the double jeopardy protections." 1-ER-15-

16. Second, it held *Sanabria* and the "allowable unit of prosecution" test were inapplicable, rather *Blockburger v. United States*, 284 U.S. 299 (1932), supplied the governing test, and under *Blockburger*, "direct deliberate homicide and accountability criminalize different conduct and contain different elements," so "[e]ach offense requires proof of a fact that the other does not." 1-ER-24-26.

The district court also observed that its review, like that of this Court, was *de novo* and it was "not bound to defer to the state court's decision in this §2241 proceeding." 1-ER-16, 1-ER-11-12. It rejected the application of the *Younger*[8] abstention and the *Rooker-Feldman*[9] doctrine. 1-ER-12. It granted a certificate of appealability, concluding, "Wood presents close questions, and reasonable jurists could find a basis to encourage further proceedings." 1-ER-27.

#### 5. No Second Amended Information.

The State of Montana intends to try Wood on the Amended Information. 5-ER-1036-38. There is no Second Amended Information, and there is no new or different charging document alleging only direct liability or omitting the allegation of accountability. At the hearing on Wood's Motion to Dismiss with Prejudice on April 15, 2025, the trial court inquired:

> THE COURT: … Is there a new information in this case now that doesn't have accountability in it?

---

[8] *Younger v. Harris*, 401 U.S. 37 (1971).
[9] *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923).

[STATE OF MONTANA]: That's correct.

THE COURT: That's been filed, okay …

4-ER-809-57, Tx 33:8-11.

No new Information was ever filed. The Amended Information alleges accountability. 5-ER-1036 ("…or being legally accountable for the commission of the offense of Deliberate homicide."). The State represented in its Response to Wood's Application for Writ of Supervisory Control, it did not intend to retry Wood on the accountability theory. Doc. 4-ER-712, Section II(C); 1-ER-31, n.3. The Montana Supreme Court found it "necessary to clarify the consequences of *Wood I* because the State did not provide this Court with an amended information or other documentation evidencing that intent." 1-ER-35, n.4. The State has still not provided any Court with any such (second) amended information or other documentation.

On September 2, 2025, the trial court inquired again whether the State would remove accountability from the charging document. The matter was "discussed." Minute Entry, 4-ER-696. No new Information had been filed as of the date of the district court's decision (1-ER-3-27), or as of the filing of this brief. The State intends to try Wood on the same Information as it did at the first trial, the Amended Information (5-ER-1036-38), for the same offense as in the first trial.

## V. SUMMARY OF THE ARGUMENT.

Jeopardy attached when Wood's jury was empaneled and sworn on January 14, 2021. That is undisputed. 1-ER-13. Jeopardy terminated when the Montana Supreme Court held the State's proof insufficient. Whether a ruling is an acquittal is a question of federal law, and federal law defines an acquittal to encompass "any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." *Evans v. Michigan*, 568 U.S. 313, 318 (2013). *Wood II* said exactly that of *Wood I*. 1-ER-33-34, ¶14. The district court agreed the reversal was "the functional equivalent of an acquittal." 1-ER-15 It nevertheless concluded, "Wood was not acquitted." 1-ER-20.

The first trial, the subsequent acquittal on appeal, and the proposed retrial are all for the same offense. *Blockburger* applies "where the same transaction constitutes a violation of ***two*** distinct statutory provisions." 284 U.S. at 304 (emphasis supplied). There is only ***one*** statutory provision here, 45-5-102(1)(a), MCA. Sections 45-2-301 and -302, MCA, define no offense, carry no penalty, and create no crime; they supply a rule of imputed liability for offenses defined elsewhere under Montana's Criminal Code. Under *Sanabria*, the legislature and not the prosecutor fixes the allowable unit of prosecution, and the prosecution may not "fragment what is in fact a single crime into its components" to escape the Double Jeopardy Clause. 437 U.S. at 72 n.29.

The district court relied on two grounds on which it denied relief. The first presupposes a single crime committed by alternative means. The second holds there are two distinct offenses with different elements. If the second is right, this was never an alternative-means case and *Ramos* is inapplicable and double jeopardy prohibits retrial. If the first is correct, there is one offense, and *Wood* was acquitted of it.

Finally, the alternative-means principle is contrary to federal law. It originates in the Supreme Court of Washington, which adopted it without considering *Sanabria* and over a dissent. It cannot be reconciled with *Sanabria*'s offense-based approach, and the alternative means plus collateral-estoppel principle relied upon by *Wood II* is precisely what *Dixon* forbids.

## VI. ARGUMENT.

### a. Standard of Review.

The standard of review is *de novo*. A habeas petition "raising a double jeopardy challenge to petitioner's retrial in state court is properly treated as a petition filed pursuant to 28 U.S.C. § 2241." *Belleque,* 554 F.3d at 821. Such a petition "is not reviewed under the deferential standards imposed by AEDPA." *Id.* at 828. A federal court must instead grant relief if it concludes "on de novo review that retrying [her] on [the] charge would violate the Double Jeopardy Clause." *Id.; See*

*also, Stow*, 389 F.3d at 888. The district court applied that standard (1-ER-11-12) and the State did not contest it (2-ER-147-48).

A district court's denial of a petition filed pursuant to 28 U.S.C. § 2241 is reviewed *de novo*. *Bello-Reyes v. Gaynor*, 985 F.3d 696, 699 (9th Cir. 2021); *Harrison v. Gillespie*, 640 F.3d 888, 896-97 (9th Cir. 2011)(*en banc*). Underlying factual findings are reviewed for clear error. *Zavala v. Ives*, 785 F.3d 367, 370 (9th Cir. 2015).

**b. Abstention was and Still is not Appropriate.**

The district court correctly declined to abstain. A claim that a State prosecution will violate the Double Jeopardy Clause is an exception to *Younger* abstention, *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992), and the *Rooker-Feldman* doctrine does not apply to § 2241 petitions. *Gouveia v. Espinda,* 926 F.3d 1102, 1107 (9th Cir. 2019); 1-ER-12.

**c. Wood Exhausted her State Court Remedies.**

The exhaustion requirement is not jurisdictional in § 2241 cases. *Dominguez v. Kernan*, 906 F.3d 1127, 1135 n.9 (9th Cir. 2018). Wood nonetheless exhausted all available state court remedies. *See* Petition 2-ER-239-40, ¶8; Memorandum 2-ER-187-95, Section II(b). The district court set out the results of those efforts in its Order (1-ER-3-10, Section I). Respondents raised no exhaustion defense below (2-ER-130-70), and the defense, which has no merit, is otherwise waived.

**d. Jeopardy Attached and Terminated.**

**1. The Double Jeopardy Clause and the Interests It Protects.**

The Fifth Amendment provides no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This provision was made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784 (1969). Jeopardy attaches once a jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 35 (1978) (citing *Downum v. United States,* 372 U.S. 734 (1963)). "From that point forward, the defendant has a constitutional right, subject to limited exceptions, to have his case decided by that particular jury." *United States v. Chica,* 14 F.3d 1527, 1531 (11th Cir. 1994).

This right is valuable because multiple trials can be "grossly unfair," can increase "the financial and emotional burden" on the defendant, and "prolong the period in which he is stigmatized" by having charges pending. *Arizona v. Washington,* 434 U.S. 497, 503-04 (1978). Multiple trials "may even enhance the risk that an innocent defendant may be convicted." *Id.* at 504. The Double Jeopardy Clause therefore protects a criminal defendant from repeated prosecutions for the same offense. *Witte v. United States,* 515 U.S. 389, 395-96 (1995). "[T]he prohibition of the Double Jeopardy Clause is 'not against being twice punished, but against being twice put in jeopardy.'" *Downum,* 372 U.S. at 736 (*quoting United States v. Ball,* 163 U.S. 662, 669 (1896)).

**2. Jeopardy Attached When the Jury was Empaneled and Sworn.**

Jeopardy attaches once a jury is empaneled and sworn. *Crist,* 437 U.S. at 35; *Downum,* 372 U.S. at 737-38. The jury was empaneled and sworn at Wood's trial on January 14, 2021. 5-ER-990-1009, TTx 949:7-950:18. Jeopardy attached. The district court agreed. 1-ER-13 ("It is undisputed that jeopardy attached to Wood when the jury was empaneled and sworn during the January 2021 trial.").

**3. Jeopardy Terminated: *Wood I* was an Acquittal as a Matter of Federal Law.**

If there is an absolute rule under the Double Jeopardy Clause, it is that an acquittal is the final determination of the offense charged. It cannot be reviewed "without putting the [defendant] twice in jeopardy, thereby violating the constitution." *Fong Foo v. United States,* 369 U.S. 141, 143 (1962)(*per curiam*) (*quoting Ball* 163 U.S. at 671). That is "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence." *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571 (1977). Courts analyzing a claim of previous acquittal "do not write on a clean slate," and "[o]ur cases have applied *Fong Foo's* principle broadly." *Evans,* 568 U.S. at 318. *Evans* catalogues the decisions rejecting successive efforts to press exceptions to that rule. *Id*. Among them, the most analogous to this case is *Sanabria*, which prohibited retrial on an alternative theory of the same offense even

where that theory had been improperly dismissed by the trial court. *Sanabria v*437 U.S. at 68-69.

Jeopardy must not only attach; it must terminate. "'[T]he conclusion that jeopardy has attached begins, rather than ends, the inquiry.'" *United States v. Jose*, 425 F.3d 1237, 1240 (9th Cir. 2005) (*quoting Illinois v. Somerville*, 410 U.S. 458, 467 (1973)). "There must also be a jeopardy terminating event." *Id*. An unreversed appellate determination of insufficiency of the evidence is the functional equivalent of a jury verdict of acquittal. *United States v. Jimenez Recio*, 371 F.3d 1093, 1107 (9th Cir. 2004) (citing *Burks*, 437 U.S. at 16).

"[I]t is well established that whether an acquittal has occurred for purposes of the Double Jeopardy Clause is a question of federal, not state, law." *McElrath v. Georgia*, 601 U.S. 87, 96 (2024). "What then, is an acquittal?" *Id.* at 94. "'[L]abels [including those provided by state law] do not control our analysis in this context.'" *Id*. (*quoting Evans,* 568 U.S. at 322). "Our cases have defined an acquittal to encompass any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." *Evans,* 568 U.S. at 318. "[A]n acquittal has occurred if the factfinder 'acted on its view that the prosecution had failed to prove its case.'" *McElrath,* 601 U.S. at 96 (*quoting Evans,* 568 U.S. at 325). An acquittal occurs whenever the appellate court determines the government's case "should not even have been submitted to the jury." *Burks,* 437 U.S. at 16 (emphasis in original).

*Wood I* held, "the District Court erroneously submitted the State's alternatively charged accountability to deliberate homicide by aiding or abetting theory for jury consideration and determination"… and " jury instructions regarding the alternative accountability theory … should have not been placed before the jury in the first instance." 1-ER-78-79 and 1-ER-76-77, ¶¶53, 50.

The Montana Supreme Court itself characterized the holding as an acquittal:

> Notwithstanding our reference to instructional error, *Wood I,* ¶53, our decision was grounded on the dearth of trial evidence proving the second element of accountability … Because the State presented no evidence or argument supporting that element, we held the District Court "erroneously submitted the State's alternative deliberate homicide by accountability theory for jury consideration and determination." *Wood I,* ¶44. The *substantive* correctness of the jury instructions was not at issue. *Wood I,* ¶50. Rather, we determined the accountability instruction was *unsupported* by the evidence and "should have not been placed before the jury in the first instance." *Wood I,* ¶ 50. Our reversal of Wood's first conviction amounted to a ruling that the State's proof was insufficient to establish criminal liability for deliberate homicide by accountability. … we overturned Wood's first conviction because the prosecution failed to introduce any evidence proving deliberate homicide by accountability.
>
> 1-ER-33-34, and 1-ER-38, ¶¶14, 21 (emphasis in original).

The U.S. district court agreed, describing the reversal as one "for lack of sufficient evidence, which is the functional equivalent of an acquittal." 1-ER-15. It recited the settled rule "that 'when a defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict, the Double Jeopardy Clause bars a retrial on the same charge,'

*Lockhart v. Nelson,* 488 U.S. 33, 39 (1988)," and that such a reversal "is equivalent to an acquittal because it means 'no rational factfinder could have voted to convict' on the evidence presented. *Tibbs v. Florida,* 457 U.S. 31, 40-41 (1982)" 1-ER-14. The district court also held "any attempt to retry Wood for deliberate homicide by accountability would run afoul of Wood's right to be free from double jeopardy." 1-ER-19. Yet, later states flatly "Wood was not acquitted." 1-ER-20. Both statements cannot be true, and the first (Wood was acquitted), is the one federal law compels.

**i. The State may not Parse the Acquittal, Because There is no Verdict to Reinstate.**

The prosecution may appeal a post-verdict acquittal, but only where reversal would simply reinstate the jury's original verdict. *Jimenez Recio*, 371 F.3d at 1107 (citing *United States v. Wilson*, 420 U.S. 332, 352 (1975)); *United States v. Johnson*, 229 F.3d 891, 892 (9th Cir. 2000); *United States v. Martinez*, 122 F.3d 1161, 1163 (9th Cir. 1997). The rationale is that "[i]f the defendant is initially convicted … the government may appeal any subsequent reversal … because successful appeal would not necessitate a new trial but would only reinstate the original conviction." *Martinez*, 122 F.3d at 1163 (*quoting United States v. Foumai*, 910 F.2d 617, 619 (9th Cir. 1990)).

The State does not seek to reinstate the original conviction. It seeks a new trial at which it will embark upon a new factfinding proceeding to establish guilt or

innocence. This is precisely what the Double Jeopardy Clause forbids. "Subjecting the defendant to post acquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause." *Smalis v. Pennsylvania*, 476 U.S. 140, 145 (1986). *Arizona v. Rumsey*, 467 U.S. 203, 211-12 (1984), explained there was "[n]o double jeopardy problem presented in *Wilson* because the appellate court, upon reviewing asserted legal errors of the trial judge could simply order the jury's guilty verdict reinstated; no new factfinding would be necessary, and the defendant would therefore not be twice placed in jeopardy."

*Smith v. Massachusetts*, 543 U.S. 462, 467 (2005), confirms the point: "[w]e have long held that the Double Jeopardy Clause of the Fifth Amendment prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict." The single exception is that "[w]hen a jury returns a verdict of guilty and a trial judge (or an appellate court) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty." *Id*. "But if the prosecution has not yet obtained a conviction, further proceedings to secure one are impermissible." *Id*.

"Allegations in an indictment that are not necessary to establish a violation of a statute are surplusage and may [be] disregarded if the remaining allegations are sufficient to charge a crime." *United States v. Garcia-Paz*, 282 F.3d 1212, 1217 (9th

Cir. 2002) (*quoting United States v. McIntosh*, 23 F.3d 1454 (8th Cir. 1994)). The language in the Amended Information, 5-ER-1036-38, regarding accountability was not necessary to establish a violation of the statute, 45-5-102(1)(a), MCA, and the State admits as much in the Motion for Leave to File Amended Information itself, 5-ER-1059. Because the language was surplusage, the State may not rely upon it to manufacture a second independent offense of deliberate homicide by direct liability.[10]

This Court held in *United States v. James*, 109 F.3d 597, 599 (9th Cir. 1997), that *Burks* "precludes a retrial where an unreversed appellate ruling held the Government had failed to produce sufficient evidence for conviction on the count sought to be retried." There was and is only one count in the Amended Information (5-ER-103638), the same sole count upon which the Montana Supreme Court found the State had failed to produce sufficient evidence.

"We summarized our holding in *Burks* as being 'that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient.'" *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 306 (1984)(*quoting Burks,* 437 U.S. at 18); *See Also, Richardson v. United States*, 468 U.S. 317, 325 (1984)("Our holding in *Burks* established only that an appellate

---

[10] Again, this offense, deliberate homicide by direct liability, was specifically charged in the Amended Information. *See* 5-ER-1059-71 and 5-ER-1036-38.

court's finding of insufficient evidence to convict on appeal from a judgment of conviction is for double jeopardy purposes, the equivalent of an acquittal."). Wood was charged with one, and only one, count of deliberate homicide in violation of 45-5-102(1)(a), MCA, and the insufficiency finding was as to that sole count. Jeopardy terminated.

#### 4. Jeopardy Also Terminated When the Jury was Discharged Without an Express Verdict and Without Wood's Consent.

*Green v. United States*, 355 U.S. 184 (1957), is usually cited for its implied-acquittal holding. It supplies a second and independent principle:

> [T]he result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. For here, the jury was dismissed without returning any express verdict on that charge and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense.
>
> *Id.* at 190-191.

The Sixth Circuit has recognized such a terminating event. *Terry v. Potter*, 111 F.3d 454, 458 (6th Cir. 1997)("what happened here most accurately is described as a termination of the jeopardy … without a conviction or an acquittal, but a termination nonetheless")(*quoting Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir. 1988)).

Wood's case presents this type of jeopardy terminating event. Wood's jury was discharged without returning an express verdict on either theory of liability, and without Wood's consent. It was given a full opportunity to return such a verdict, and no extraordinary circumstance prevented it from doing so. What prevented it was the trial court and the State — over Wood's objection, after Wood proposed a verdict form which would have required the jury to specify the theory, and after the State had conceded such a form was appropriate. 1-ER-57-59, ¶¶28-29. Wood's jeopardy on the direct-liability theory came to an end when that jury was discharged.

This argument does not depend on an implied acquittal, which Wood does not assert. 2-ER-123. It rests on the "valued right to have [her] trial completed by a particular tribunal." *Crist,* 437 U.S. at 36; *Terry*, 111 F.3d at 458.

**e. The Acquittal and the Proposed Retrial are for the Same Offense.**

The second step in analyzing a plea of former acquittal is to determine whether the case involves a successive prosecution for the "same offence." *Denezpi v. United States*, 596 U.S. 591, 597 (2022). Wood was charged with one count of deliberate homicide in both the original Information (5-ER-1072-74), and the Amended Information (5-ER-1036-38). Both allege the homicide was committed by shooting LaFriniere with a firearm. The State of Montana intends to try Wood a second time for this same offense.

### 1. *Dixon* Foreclosed any Test Beyond the Same-Elements Test.

Thirty-three years ago the Supreme Court clarified that employing a "same conduct" test under the Double Jeopardy Clause "is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." *Dixon*, 509 U.S. at 704. *Dixon* explicitly rejected the "embarrassing" proposition that the same-elements test should be applied differently in the multiple-punishment and successive-prosecution contexts:

> We have often noted that the Clause serves the function of preventing both successive punishment and successive prosecution, … but there is no authority, except *Grady*, for the proposition that it has different meanings in the two contexts. That is perhaps because it is embarrassing to assert that the single term "same offence" (the words of the Fifth Amendment at issue here) has two different meanings — that what is the same offense is yet not the same offense.

*Dixon*, 509 U.S. at 704 (citations omitted)(emphasis in original).

*Dixon* overruled *Grady* and held the *Blockburger* test carries no "additional requirement beyond the 'elements' standard." *Id*. at 708-09.

### 2. *Blockburger* Applies Only Where one Transaction Violates two Distinct Statutory Provisions.

The district court applied *Blockburger*. It quoted the test correctly: "where the same transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact the other does not." *Blockburger*, 284 U.S. at

304 (emphasis added); 1-ER-25. It then applied that test to a case involving only one statutory provision.

Wood was charged with violating only 45-5-102(1)(a), MCA. That is the only offense-defining provision in the case. Sections 45-2-301 and -302, MCA, define no offense. They create no crime, prescribe no penalty, and cannot be violated standing alone. They are provisions of general applicability which impute the conduct of another, for whatever offense, charged elsewhere, to a defendant. Section 45-2-301 makes this explicit: a person is responsible for her own conduct, the conduct of another for which she is legally accountable, "or both." A statute that operates on "both" at once is not describing two offenses.

The two authorities the district court relied upon in its decision to apply the *Blockburger* test confirm the limitation. *Missouri v. Hunter*, 459 U.S. 359 (1983), involved Missouri's first-degree robbery statute and its separate and distinct statutory provision armed-criminal-action statute. It involved two statutory provisions. *United States v. Hickey*, 367 F.3d 888, 891-92 (9th Cir. 2004), similarly involved two separate and distinct federal statutes. Neither case applied *Blockburger* to a single statutory provision, because *Blockburger* does not apply where, as here, there is only one statutory provision at issue.

The district court's own formulation discloses its flawed reasoning. It wrote "Wood was charged with committing deliberate homicide in one of two alternative

statutory manners." 1-ER-24. Two alternative manners of committing one offense is the definition of a single offense, not two.

### 3. *Keen,* Does Not Distinguish this Case; It Supports Wood.

The district court declined to apply *Sanabria*'s allowable-unit-of-prosecution analysis on the authority of *United States v. Keen*, 104 F.3d 1111 (9th Cir. 1996). It reasoned the test governs only where a defendant is "charged with 'multiple violations of the same statutory provision,'" arising from a single act, and "*Keen,* and the corresponding 'allowable unit of prosecution' test, is not analogous to Wood's situation" because "Wood was charged with committing deliberate homicide in one of two alternative statutory manners." 1-ER-24. The State pressed the same distinction. 2-ER-155 ("This is not a count multiplicity situation.").

The distinction does not survive examination, for four reasons.

First, *Keen* supports Wood. Keen was convicted and sentenced twice for the simultaneous possession of a firearm and of ammunition. This Court held the "possessions from the transaction compromised only one offense" because the defendant engaged in "the same act" constituting "a violation of only one statutory provision." *Keen,* 104 F.3d at 1118-20; 1-ER-24 (describing Keen's acts and conduct). Wood's case presents the same structure in simpler form: one act — the shooting of Matthew LaFriniere — violating one statutory provision, 45-5-102(1)(a), MCA. This is particularly apparent from the Motions for Leave to File

(Original) Information(5-ER-1077-89) and Amended Information (5-ER-1059-71): They contain *identical* allegations of fact. If the unit-of-prosecution inquiry governed in *Keen*, it also governs Wood.

Second, the distinction assumes its own conclusion. To say Wood was charged in "two alternative statutory manners" rather than with one violation of one provision is to assume the answer to the only contested question in the case: whether sections 45-2-301 and -302 supply an alternative statutory manner of committing an offense *or* a rule of imputed liability for the single offense 45-5-102(1)(a) defines. *Wood I* answered that question. Accountability is "neither a technically separate and distinct 'offense' apart from direct deliberate homicide." 1-ER-68, ¶40. *Wood II* repeated it. 1-ER-36, ¶17. Wood was charged with one statutory violation and the State employed more than one rule of liability in an attempt to prove that single statutory offense was committed.

Third, nothing in *Keen* confines the unit-of-prosecution inquiry to multiplicity challenges. *Keen* drew the test from *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952), and *Sanabria* drew it from the same source. 437 U.S. at 69-70. *Sanabria* was not a multiplicity case; it was a successive-prosecution case, and the Supreme Court applied the test to determine the scope of a prior acquittal. *Id.* at 70 (the legislative decision "determines the scope of

protection afforded by a prior conviction or acquittal"). The State's reading would confine *Sanabria* to its own facts while leaving its holding intact but inoperative.

Fourth, *Keen* asked the right question, and it is the question Wood answers. *Keen*'s analysis turned on whether Congress intended to create two offenses or just one. *Keen,* 104 F.3d at 1118. *Wood I*, the *Blockburger* test, and decades of Montana decisions all establish that accountability and direct liability constitute the single offense of deliberate homicide. To the extent the district court read *Keen* to confine *Sanabria* to cases charging the same act rather than the same offense, that reading finds no support in the opinion. Ignoring this lack of support, the Motions for Leave to File Information demonstrates Wood is being charged for both the same act and the same offense and *Sanabria* prohibits reprosecution and *Keen* is inapplicable.

#### 4. ***Sanabria* Holds the Legislature, not the Prosecutor, Fixes the Unit of Prosecution.**

The Supreme Court has explained an acquittal on one of two competing theories of prosecution for the same offense bars a successive prosecution on the unacquitted theory. In *Sanabria* the defendant was charged with running an illegal gambling business on two independent factual theories under a single statute: that he ran a horse betting venture and that he ran a numbers lottery. *Id.,* 437 U.S. at 57-58. Mid-trial the judge determined evidence relating to the numbers theory was not

cognizable under the statute, *Id.* at 58-60, and concluded the government had not proven the horse betting theory. *Id*. at 59.

The Court rejected the government's argument it could avoid the Double Jeopardy Clause by prosecuting a single statutory offense on multiple theories. "It is Congress, and not the prosecution, which establishes and defines offenses," and therefore only Congress may establish the "'allowable unit of prosecution.'" *Id*. at 69. The legislative decision to draft a single statutory offense covering multiple factual theories "determines the scope of protection afforded by a prior conviction or acquittal." *Id*. at 70. The prosecution may not thereafter "'fragment what is in fact a single crime into its components'" to avoid double jeopardy implications. *Id*. at 72 n.29. "The Government having charged only a single gambling business, the discrete violations of state law which that business may have committed are not severable in order to avoid the Double Jeopardy Clause's bar on retrials for the 'same offense.'" *Id*. at 73.

*Sanabria* explained why this is so. "If we were to accept the Government's theory, each of these could be varied, one at a time, to charge a separate count on which a defendant could be re-prosecuted following acquittals on any of the others." *Id.* at 73 n.32. That is precisely the mechanism the State proposes to employ against Wood.

The district court read *Sanabria* as resting on the fact the judgment of acquittal there was entered on the entire count "without specifying that it did so only with respect to one theory of liability." 1-ER-35, ¶16. *Sanabria* forecloses that reading. The *Sanabria* Court applied the unit-of-prosecution analysis "[e]ven if the Government were correct that the District Court 'dismissed' the numbers allegation" rather than entering an acquittal on the whole count. 437 U.S. at 69. Double jeopardy barred the retrial either way. The distinction on which both courts below relied is therefore not a distinction *Sanabria* drew or allowed.

**f. Montana Defines One Offense and the State Agrees.**

*Wood I* resolved the offense question directly: accountability to deliberate homicide "is neither a technically separate and distinct 'offense' apart from direct deliberate homicide as defined by § 45-5-102(1)(a), MCA." 1-ER-68, ¶40. *Wood II* repeated the holding without qualification. 1-ER-36, ¶17 ("it is not 'a technically separate and distinct offense apart from direct deliberate homicide'"). Accountability and personal responsibility are independent *theories* of prosecution for the same statutory offense. 1-ER-65-66, ¶37.

The State reads the balance of *Wood I* as supplying a second offense. It does not. Rather, it states accountability to deliberate homicide "… requires proof beyond a reasonable doubt that: (1) a deliberate homicide occurred, and (2) the accused and some other person or persons affirmatively acted with and *in furtherance of a*

*'common purpose'* before or during the homicide to aid or abet the commission of a deliberate homicide." *Wood I,* 1-ER-68-69, ¶40 (emphasis supplied). An evidentiary requirement governing one route to a single offense, the offense in this case being deliberate homicide, is *not* the definition of a second offense. Every alternative-means case involves different proof for each means — that is what makes them alternative means rather than repetitions. If differing proof requirements converted means into offenses, the alternative-means doctrine on which the State and both courts below rely, would have nothing left to operate upon.

The Montana Supreme Court has held due process does not require the charging Information to specify an accountability theory separate from the primary offense, because "[c]riminal accountability is not considered a substantive separate offense, but merely a conduit by which to find a person criminally liable for the acts of another." *State v. Tower*, 881 P.2d 1317, 1320 (1994). *Wood I* held *Tower* inapplicable to the verdict-form question then before it, 1-ER-62-63, ¶¶34-35, but did not disturb that characterization of accountability, and it has been consistently reaffirmed. *State v. Tellegen,* 2013 MT 337, ¶9 (collecting cases); *State v. Dobrowski,* 2016 MT 261, ¶¶13, 16. Shifting between theories of personal responsibility and accountability "does not constitute a substantive shift in the charge." *Tellegen,* ¶14.

The State itself has taken the position Wood is being prosecuted for the same offense. In its Pretrial Motion Regarding Former Witness Testimony (2-ER-248-59), the State sought an order admitting prior sworn testimony from the first trial under Mont. R. Evid. 804(b)(1)(B). The rule required the State to demonstrate the "objecting party had the same motive to conduct the examination as he would at trial if the witness were available at that time." *State v. Pinegree,* 2015 MT 187, ¶15; 2-ER-256.

The State argued:

> [i]n the case at bar [Wood's anticipated second trial] the [defendant's trial] attorneys did not just have a similar motive to develop the testimony of [named witnesses] in the first trial, they had the same one…The [defendant] was charged with Deliberate Homicide, [s]he cross-examined [named witnesses] with that in mind, and [s]he remains charged with the same offense. The only difference now is that the [defendant] no longer faces an alternative charge for the offense of accountability for deliberate homicide. The removal of a charge does not change the [defendant]'s motive in defending against what existed previously. Moreover, the Montana Supreme Court has already confirmed that the offense of accountability for deliberate homicide is not a "separate and distinct offense apart from deliberate homicide."
>
> 2-ER-256-57 (emphasis supplied)(citations omitted).

The State cannot represent to a Montana court that Wood "remains charged with the same offense" in order to admit its evidence, and represent to this Court that she is charged with a different one in order to try her again.

The State agreed until it became inconvenient.[11] In *Wood I* it argued, "Montana law does not distinguish between principal liability and accomplice liability," (4-ER-906); the "distinct legal theories that a person either committed a murder or was legally accountable for the murder are not mutually exclusive," (*Id.*); and "§ 45-2-301 contemplates that the State can proceed on both principal and accountability theories simultaneously…Theories of principal liability and accountability are not mutually exclusive." (4-ER-910).

The State then argued in opposition to Wood's § 2241 Petition, "the Montana Legislature has defined accountability and direct deliberate homicide as discrete bases of liability," and "accountability concerns fundamentally different conduct than direct deliberate homicide." 2-ER-156. The Double Jeopardy Clause references offenses, not *theories*, and the State's position on which is which has tracked its litigating needs rather than the statute.

---

[11] Respondents/Appellees are judicially estopped from taking an alternative position in this proceeding than asserted in Wood's previous proceedings in the Montana Courts. The purpose of the doctrine of judicial estoppel is "'to protect the integrity of the judicial process,'…by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001) *quoting Edwards v. Aetna Life Ins. Co*., 690 F.2d 595, 598 (6th Cir. 1982) and *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993).

### 1. The U.S. District Court Misunderstood the Elements of Accountability Under Montana Law.

The district court's *Blockburger* analysis rests on an assumption Montana law does not support. The court assumed a defendant cannot be convicted on an accountability theory if she personally committed the act causing death. 1-ER-26 ("Deliberate homicide requires a direct causation element; an individual must physically commit the offense. Deliberate homicide by accountability requires one to conspire or encourage another to participate in commission of the homicide.").

*Wood I* says no such thing. It states accountability "requires proof beyond a reasonable doubt that: (1) a deliberate homicide occurred, and (2) the accused and some other person or persons affirmatively acted with and *in furtherance of a 'common purpose'* before or during the homicide to aid or abet the commission of a deliberate homicide." 1-ER-68, ¶40. The first element requires: a deliberate homicide occurred. It does not require proof someone other than the accused caused the death.

Three scenarios satisfy this element. First: the State proves another person caused the death: the accused and a confederate devised a plan to kill, the accused helped execute it, and the confederate caused the death. Second: the State proves the accused caused the death. A defendant charged solely on accountability may still be convicted where the trial evidence establishes cooperative action but shows the

accused personally fired the shot, because a deliberate homicide still occurred — at the hands of the accused rather than the confederate. Section 45-2-301, MCA, confirms, a person is responsible for conduct that is an element of an offense, "if the conduct is either that of the person or that of another and the person is legally accountable for the conduct as provided in 45-2-302, or both." Third: the State proves someone within a known group including the accused caused the death, where the jury cannot say who, but is satisfied beyond a reasonable doubt the group acted cooperatively toward that end. 1-ER-66, ¶38 (discussing *Doyle*[12] *and Gollehon,*[13] in which "the defendants … were alternatively charged with deliberate homicide and accountability to deliberate homicide by aiding or abetting another in the commission of violent beating deaths involving multiple simultaneous assailants, under circumstances where it was not clear whether any of them were the primary perpetrator or cause of the decedent's death.").

The consequence is dispositive under the district court's own test. The second and third scenarios may rest on the factual and legal premise the accused physically caused the death. Accountability may therefore require proof of a fact direct liability does not; but direct liability does not require proof of any fact accountability does not. *Blockburger* asks whether each provision requires proof of a fact the other does

---

[12] *State v. Doyle,* 2007 MT 125.
[13] *State v. Gollehon,* 864 P.2d 249, 261-62 (1993).

not. 284 U.S. at 304. Here it does not, and the two are the same offense — as Montana has treated them for decades.

**2. The Montana Legislature's Intent to Create a Single Offense is Clear.**

Even if Wood's application of *Blockburger* were wrong, the district court's conclusion would remain erroneous. "The *Blockburger* test is merely "a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose…should not be controlling where…there is a clear indication of contrary legislative intent."" *United States v. Overton,* 573 F.3d 679, 691 (9th Cir. 2009) (*quoting Albernaz v. United States*, 450 U.S. 333, 340 (1981).

The Montana Supreme Court has held, as a matter of state law, 45-5-102(1)(a), MCA, contains a single statutory offense which may be satisfied on either of two alternative theories. 1-ER-68-69, ¶40. The district court acknowledged how settled that law is: "Montana case law has always treated the crime of 'deliberate homicide by accountability' the same as the crime of 'deliberate homicide.'" 1-ER-22 (collecting cases). Having recognized the clarity of Montana's legislative intent, the district court had no room to conclude accountability and direct homicide are different offenses for double jeopardy purposes. What the Montana Legislature intended is a question of Montana law on which the Montana Supreme Court is the final authority.

This conclusion is reinforced by the absence of any suggestion a person may be convicted and sentenced for both accountability and direct homicide arising from a single death under 45-5-102(1)(a), MCA. If two provisions are the same offense in the multiple-punishment context, they are the same offense in the successive-prosecution context. *See Dixon,* 509 U.S. at 697, 704.

### 3. The Charging Document Confirms a Single Offense.

Due process imposes a notice requirement on charging documents. "An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Buckley,* 689 F.2d 893, 896 (9th Cir. 1982). "An indictment is sufficient if it…enables [defendant] to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117 (1974). *Sanabria* likewise recognized: "[t]he precise manner in which an indictment is drawn cannot be ignored, because an important function of the indictment is to ensure, 'in case any other proceedings are taken against [the defendant] for a similar offence,…the record [will] [show] with accuracy to what extent he may plead a former acquittal or conviction.'" 437 U.S. at 65-66.

In Montana, "[w]e read the information, and the affidavit in support thereof, as a whole to determine the sufficiency of the charging documents." *State v. Wilson,* 2007 MT 327, ¶25. The original Information (5-ER-1072-74), and the Motion for

Leave to File Information and Affidavit in Support (5-ER-1077-89), contain factual allegations identical to those in the Amended Information (5-ER-1036-38), and the Motion for Leave to File an Amended Information and Affidavit in Support (5-ER-1059-71).They allege the same offense.

*Tower* permits the incorporation of multiple theories of liability into one charging document alleging a single statutory violation. Having availed itself of that rule, the State now argues the theory of liability — which need not be alleged — determines defendant's double jeopardy protections. That argument cannot be squared with *Hamling*. If correct, every citizen charged with a crime provable on two or more theories of liability would be unable to plead acquittal or conviction in bar of future prosecution for the same offense.

Wood is set to be tried on the Amended Information (5-ER-1036-38), which alleges both direct and accountability liability: "[Wood] committed the offense of Deliberate homicide by purposely or knowingly causing the death of Matthew LaFriniere, by shooting him with a firearm or being legally accountable for the commission of the offense of Deliberate homicide." *Id.*

**4. *Garrett and Barrett* Confirm, *Blockburger* Governs and is Satisfied.**

Where the same conduct violates two statutory provisions, "the first step in the double jeopardy analysis is to determine whether the legislature…intended that

each violation be a separate offense. If [the legislature] intended that there be only one offense — that is, a defendant could be convicted under either statutory provision for a single act, but not under both — there would be no statutory authorization for a subsequent prosecution after conviction of one of the two provisions, and that would end the double jeopardy analysis." *Garrett v. United States,* 471 U.S. 773, 778 (1985).

The analysis is more straightforward here than in *Garrett,* because the conduct in question — the single act of shooting LaFriniere — violates only one statutory provision. The Montana Legislature intended the conduct alleged in the Amended Information to violate only 45-5-102(1)(a), MCA. There is no statutory authorization for a subsequent prosecution after acquittal where there is only one statutory provision at issue.

The Supreme Court recently reaffirmed the *Blockburger* test governs a double jeopardy analysis arising in the successive-prosecution context. In *Barrett v. United States*, 607 U.S. 128 (2026). Justice Gorsuch summarized the state of the law:

> Someday, we will need to resolve the tension in our case law. And when we do, I see two likely solutions. One would be to say out loud what some of our cases imply: that the constitutional phrase, "the same offence," Amdt. 5, means different things in different contexts. In the successive-prosecution context, two charges amount to the same offense if they fail the Blockburger test. But in the concurrent-prosecution context, two charges amount to the same offense only if they fail the Blockburger test and Congress has not clearly intended punishment under both. That solution, though, would be a curious one indeed. Not only would it allow Congress

> to permit in the concurrent-prosecution context what we have long held the Constitution forbids in the successive-prosecution context. Really, it is a little "embarrassing to assert that the single term 'same offence'" in the Double Jeopardy Clause "has two different meanings."

*Barrett,* 607 U.S. at 152-153 (Gorsuch, J., concurring in part)(*quoting* Dixon, 509 U.S. at 704).

Embarrassing or not, employing the rule under the cases referenced by Justice Gorsuch, the analysis here is straightforward. There is one charge: deliberate homicide in violation of 45-5-102(1)(a), MCA. (5-ER-1036-38). Wood was prosecuted under multiple theories of liability at her first trial and acquitted on appeal. The State now seeks to re-prosecute her, for the same offense, pursuant to the same charging document (5-ER-1036-38), and based on the same facts, identically alleged in the supporting affidavits (5-ER-1077-89 and 5-ER-1059-71).Whether this circumstance amounts to concurrent prosecution or successive prosecution, the result is the same. The charged offense is the same offense, one violation of one statutory provision, and the charge fails the *Blockburger* test because direct/straight deliberate homicide and homicide by accountability are the same offense. *See* 45-5-102(1)(a), MCA; *See Also, Tower,* 881 P.2d at 1320. If the prosecution is successive prosecution, the Montana Legislature did not intend separate punishments under each theory of liability. Concurrent, successive, or both, the Double Jeopardy clause prohibits the re-prosecution of Wood.

> A second solution would be to recognize, as others of our cases imply, that two charges amount to the same offense under the Double Jeopardy Clause if they fail the *Blockburger t*est — full stop. So a defendant cannot be prosecuted for both charges in successive proceedings. Nor may he be convicted twice (much less sentenced twice) for both charges just because they happen to be brought concurrently.

*Barrett*, 607 U.S. at 153 (Gorsuch, J concurring in part).

Under either approach the analysis is the same. There is one charge, deliberate homicide in violation of s 45-5-102(1)(a), MCA. Direct deliberate homicide and deliberate homicide by accountability are one offense under one statutory provision and therefore fail *Blockburger*. Whether the circumstance is characterized as concurrent or successive, the Double Jeopardy Clause prohibits Wood's re-prosecution.

**g. The Alternative-Means Principle has no Basis in Federal Law.**

**1. The Two Grounds of the Order Below Cannot Both be Correct.**

The district court denied relief on two independent, contradictory grounds.

The first is the alternative-means principle. Adopting *Ramos*, the court held "'when a jury renders a guilty verdict as to a single crime, but one of the alternative means for committing that crime is later held to be invalid on appeal…double jeopardy does not bar retrial on the remaining, valid alternative mean,' and concluded "because jeopardy under the direct liability theory did not terminate,

Wood cannot avail herself of the double jeopardy protections." 1-ER-14-16, *quoting Ramos*, 184 P.3d at 1259. That reasoning presupposes a single crime committed by alternative means.

The second is *Blockburger*. The district court held, "direct deliberate homicide and accountability criminalize different conduct and contain different elements," and "[e]ach offense requires proof of a fact that the other does not." 1-ER-25-26. That reasoning presupposes two distinct offenses.

Both cannot be true. If direct liability and accountability are two offenses, this was never an alternative-means case, *Ramos* is inapposite by its own terms, and the first ground collapses. If they are alternative means of one crime — as *Wood I* ¶40, *Wood II* ¶17, and the district court's own first ground all state — then they are the same offense, *Blockburger* is satisfied in Wood's favor, and the second ground collapses. The State cannot have deliberate homicide be one offense for purposes of preserving jeopardy and two offenses for purposes of defeating it.

**2. *Ramos* is a State Law Construct and Cannot be Reconciled with *Sanabria.***

The Montana Supreme Court and the U.S. district court both rested on *State v. Ramos,* 184 P.3d 1256 (2008). 1-ER-37, ¶18; 1-ER-14-15. *Ramos* held:

> The well-settled alternative means analysis that applies in this case dictates that where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by

> which the crime was committed so long as substantial evidence supports each alternative means [submitted to the jury].
>
> *Ramos,* 184 P.3d at 1258 (citations omitted).

*Ramos* makes no mention of *Sanabria* and makes no attempt to reconcile Washington's alternative-means rule, the right to a unanimous verdict, and double jeopardy. The decision drew a dissent, which concluded the offenses were the "same offense" under the Fifth Amendment and Article I, section 9 of the Washington Constitution and subsequent prosecution was prohibited. *Ramos,* 184 P.3d at 1260 (Sanders, J., dissenting). *Ramos,* and *Wood II* with it, are incompatible with *Sanabria.*

### 3. This Court Reads *Sanabria* as Wood Does.

*Williams v. Warden,* 422 F.3d 1006 (9th Cir. 2005), confirms this Court does not read *Sanabria* as *Wood II* did. The *Williams* defendant was tried for both Driving Under the Influence and Driving Under the Influence Per Se as alternative theories of the same statutory offense, but unlike Wood, the defendant in *Williams* was charged with an independent count for each theory. *Id.* at 1007-08. As Wood attempted unsuccessfully to achieve in her trial, the *Williams* verdict form called for specific findings as to each theory. *Id.* at 1008. The jury entered a specific finding of not guilty on the DUI theory and guilty on the DUI Per Se theory. *Id.* The defendant in *Williams* argued double jeopardy barred simultaneous conviction and acquittal on distinct theories of the same offense. *Id.* at 1007.

This Court recognized when a defendant is acquitted on a discrete theory of a statutory offense, *Sanabria* prevents the government from relitigating the case on a different theory of that same offense. *Id.* at 1011; *State v. Wright,* 203 P.3d 1027, ¶35 (2009)(citing *Sanabria* for the proposition "[w]hen a proceeding ends in an undisturbed verdict or verdict equivalent on any alternative, the State may not prosecute the defendant on any other means of committing the same offense").

In *Williams* the principle was not implicated because there was no successive prosecution: the acquittal and the conviction occurred simultaneously and the basis for each was clear from the special verdict form. *Williams,* 422 F.3d at 1011 ("There was one trial at which the jury rendered its verdicts simultaneously. The government litigated the case once — not twice — under alternative theories, as is its right.").

Here the successive-prosecution bar is squarely implicated. The central act charged was purposely or knowingly causing the death of Matthew LaFriniere. A single crime was alleged; responsibility and accountability were the State's alternative factual theories of how it was committed. Just as Wood could not have received cumulative punishments on both theories, she cannot be re-prosecuted after being acquitted on one.

### 4. The Montana Supreme Court's "Elements Plus Collateral-Estoppel" Test Rests on *Sanabria Dicta*.

*Wood II* applied an "elements plus collateral-estoppel" test to Wood's successive-prosecution claim. Although it acknowledged responsibility and accountability are different theories of the same offense under Montana law, it asserted the bar on successive prosecutions is limited to circumstances where the acquittal was "due to insufficient proof of an element shared by both theories of liability." 1-ER-36, ¶17.

The portion of *Sanabria* on which that test rests is *dicta*. It was a hypothetical discussion of a distinct strand of double jeopardy doctrine dealing with multiple violations of the same statute involving multiple victims, and hence the commission of multiple crimes. *Sanabria*, 437 U.S. at 72-73 & n.31 (citing *Ashe v. Swenson*, 397 U.S. 436 (1970)). *Sanabria* commented on collateral-estoppel only because the government raised a hypothetical concern about what would have occurred, but did not occur, had multiple counts been charged alleging numerous independent violations. The scenario was not before the Court. "[D]icta, even if repeated, does not constitute precedent." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 645 (2022). Furthermore, unlike *Williams,* the prosecution here and in *Sanabria,* chose not to allege numerous independent violations or multiple counts. The issue is not before the Court.

*Sanabria* did address the line of cases governing acquittals where, as here, only a single crime is alleged. In that context the holding was clear, and quoted above. *Sanabria's* analysis establishes, in this context the offense-based approach of the Double Jeopardy Clause is wholly independent of the fact-bound collateral-estoppel approach applicable to allegations of multiple crimes against distinct victims. *Dixon,* 509 U.S. at 705-06 (warning against conflating collateral-estoppel requirements with the same-elements test).

*Wood I* had already determined two theories alleged a single crime. Accountability was presented by the State "as an option if the jury could not unanimously find the State's evidence sufficient to support its primary theory of criminal liability and guilt." 1-ER-76-77, ¶50. *Wood II* does exactly what *Sanabria* prohibits: it fragments the offense of deliberate homicide into its component parts and requires Wood to affirmatively prove collateral-estoppel as to a shared element. That is not the *Blockburger* test, and the addition of a collateral-estoppel component is fundamentally at odds with *Dixon*.

### 5. The Alternative-Means Principle Cannot be Squared With the Breadth of the Acquittal Rule.

An acquittal is a ruling that "…actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *Martin Linen,* 430 U.S. at 571; *accord Sanabria*, 437 U.S. at 71. *Evans* illustrates how broadly the

term, some or all, is applied: the acquittal there rested on the trial court's inclusion of an element that was not part of the offense at all, and it was an acquittal, nonetheless. *Evans,* 568 U.S. at 320.

The alternative-means principle inverts the rule. It holds an acquittal does not attach to an offense unless the ruling makes explicit findings negating every alternative theory with support in the record. That demands resolution of all the factual elements and more. The alternative-means principle cannot be reconciled with *Martin Linen, Fong Foo,* or *Evans.*

The search for an exception was misconceived at the outset. *Sanabria* confronted the district court's flawed theory: "[t]he only question remaining is whether any of the exceptions to the constitutional rule forbidding successive trials on the same offense…apply here. The short answer to this question is that there is no exception permitting retrial once the defendant has been acquitted…" *Sanabria,* 437 U.S. at 75. That the district court identified distinctions between the facts of *Sanabria* and this case does nothing to narrow the acquittal rule or its near-absolute character.

**h. The State Engineered the Ambiguity it now Seeks to Exploit.**

Courts examining double jeopardy questions have focused on the prosecution's degree of culpability in creating an ambiguous verdict. *Terry,* 111 F.3d at 459 ("Neither the defendant here nor his counsel can be charged with having

brought on the dilemma faced by the Kentucky [trial] court."). Neither Wood nor her trial counsel can be charged with the dilemma faced by the Montana trial court. The dilemma must be charged to the State.

Wood sought at trial: (1) dismissal of the alternative theory of guilt for which the evidence was insufficient; (2) a specific unanimity instruction; and (3) a special verdict form specifying the theory on which the jury's verdict was based. The State successfully opposed each.

After the close of the State's evidence, Wood moved for dismissal on both theories of guilt. 1-ER-55-56, ¶26; 5-ER-990-1009, TTx 2471:10-2472:17, 2475:6-18. The State opposed the motion and persuaded the trial court to deny it. 5-ER-990-1009, TTx 2472:18-2475:4, 2475:19-2477:10. The State made the argument knowing the evidence supporting accountability was not merely insufficient but non-existent. 1-ER-38, ¶21 ("the prosecution failed to introduce any evidence proving deliberate homicide by accountability").

Wood requested a specific unanimity instruction. 5-ER-1022. *Wood I* recorded the request:

> [The State has] two *theories* [and] you have to be *unanimous* in *which theory* you agree on. …My request would only be if we could add a second sentence in that said the State has charged a deliberate homicide [that] was committed…by shooting Matthew LaFriniere with a firearm or *being legally accountable,* and to make sure that [those are] *the separate acts* that we're talking about that the jury has to be unanimous on.

1-ER-57-58, ¶28.

The State objected, and no specific unanimity instruction was given. *Id.*

Wood proposed a special verdict form requiring the jury to designate the theory on which it was returning a verdict. 1-ER-58, ¶29. Wood's form provided for a unanimous verdict on either "'the charge of Deliberate Homicide' or 'the alternative charge of Accountability to Deliberate Homicide.'" *Id.*; 1-ER-30, ¶4; 5-ER-1035 The State objected. 5-ER-990-1009, TTx 2526:25-2527:2. "The District Court rejected the verdict form requested by Wood and furnished the jury with the State's proposed general verdict form instead, which allowed the jury to find Wood guilty or not guilty of deliberate homicide without differentiating between the direct liability and accountability theories." 1-ER-30, ¶4.

Which theory the jury relied on is unknown because the State prevented Wood from establishing it at each opportunity. "The doctrine of invited error prevents a defendant from complaining of an error that was his own fault." *United States v. Myers,* 804 F.3d 1246, 1254 (9th Cir. 2015)(*quoting United States v. Reyes-Alvarado,* 963 F.2d 1184, 1187 (9th Cir. 1992)). The principle cuts against the State here.

*United States v. Garcia*, 938 F.2d 12 (2nd Cir. 1991) supports Wood's argument that the State's misconduct and invited error should not be rewarded. The *Garcia* Court held:

> Thus, here, as in so many other cases, the uncertainty over theories could have been clarified through the use of special interrogatories,

> which would have obviated the need for a retrial. Had the jury based its verdict on the "wrongful use of fear" theory only, then there would have been an implicit acquittal and the alternative theory and a retrial would have violated the double jeopardy clause.
>
> …
>
> The Garcias correctly argue that they were under no obligation to request special interrogatories -- but neither was the government. Our holding is simply that the Garcias cannot now complain of an ambiguity that they had the opportunity to clarify. Both sides ran a risk by not requesting interrogatories and thereby leaving the verdict ambiguous. The government's risk, which matured to reality, was that if the evidence was insufficient to support both theories of extortion, the conviction would be reversed. The Garcias' risk was that if such a reversal were obtained, the result would be not dismissal but a new trial on the remaining theory.
>
> *Id.* 938 F.2d at 16.

Unlike the *Garcia* defendants, Wood made a concerted effort to avoid the necessity of retrial. She did so against the State's efforts to permit the jury to convict her on a theory unsupported by the evidence and which never should have been submitted. 1-ER-70-71, ¶42. The State, for reasons that could only relate to a desire to patch over deficiencies in its case, sought to obscure the basis for the verdict in the ambiguity of a general verdict form. It now seeks to be rewarded by treating the first trial as a test run for a second on its preferred theory. Unlike cases in which "a defendant's consent dispels any specter of double jeopardy abuse that two trials might otherwise present," (*Currier v. Virginia,* 585 U.S. 493, 502 (2018)), Wood objected consistently and forcefully. *See also Wright,* 203 P.3d 1027, ¶42 ("When

the circumstances suggest the prosecution's action was motivated by a concern it could not prove its case, retrial is impermissible.").

The district court distinguished *Garcia* but did not address what *Garcia* implies for the alternative-means principle where the State commits invited error to prevent the accused from obtaining a full verdict from the original jury. *Garcia* observed "[b]oth sides ran a risk by not requesting interrogatories and thereby leaving the verdict ambiguous." 938 F.2d at 16. Wood ran no such risk, because Wood requested both. The question the district court did not reach is whether the State should receive the windfall of continuing jeopardy arising from an error it invited, and to which Wood objected and attempted three times to remedy.

The interests behind the Double Jeopardy Clause are served by granting Wood's petition. The State deliberately chose to forgo "one fair chance to prove its case" and instead presented a theory it did not believe was supported by the evidence. It should not continue to benefit from that choice, in this case or any other.

**i. Retrial Would not Serve the Interests Identified in *Tateo*.**

Both the U.S. district court and *Wood II* closed with *United States v. Tateo,* 377 U.S. 463, 466 (1964), reasoning retrial protects "the right of an accused to be given a fair trial" as well as "the societal interest in punishing one whose guilt is clear after [she] has obtained such a trial." 1-ER- 26; 1-ER-37, ¶19.

*Tateo* describes the interest in retrial after a conviction is set aside for trial error. It has never been held to authorize retrial after an acquittal, and *Burks* drew precisely that line fourteen years later: where reversal rests on evidentiary insufficiency rather than trial error, "the Double Jeopardy Clause precludes a second trial." *Burks,* 437 U.S. at 18. *Tateo* cannot be read to dissolve the distinction *Burks* drew, and the societal interest it identifies — punishing one whose guilt is clear — is not engaged where an appellate court has held the State's proof insufficient.

## VII. CONCLUSION.

Wood has been tried and acquitted. Wood requests this Court reverse the judgment of the district court, grant her petition under 28 U.S.C. § 2241, bar the State of Montana from prosecuting her in Twentieth Judicial District Court Case No. DC-19-7, and order the State of Montana and the Twentieth Judicial District Court to discharge her from custody and remove all other restraints on her liberty.

Respectfully submitted this 24th day of August, 2026.

/s/ Shandor S. Badaruddin

Shandor S. Badaruddin

*Attorney for Appellant Wood*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-4519

I am the attorney or self-represented party.

**This brief contains** 12,388 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- [x] complies with the word limit of Cir. R. 32-1.
- [ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- [ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- [ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- [ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- [ ] complies with the length limit designated by court order dated ______.
- [ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Shandor S. Badaruddin **Date** 8/24/2026
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*