IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
CAUSE NO. 26-4519

---

DANIELLE JEANETTE WOOD,

Petitioner/Appellant,

v.

STATE HABEAS COUNSEL, et. al.,

Respondent/Appellee.

---

**BRIEF OF RESPONDENTS AND APPELLEES**

---

On Appeal from the United States District Court
for the District of Montana Missoula Division
Cause No. 9:25-cv-000201-BMM

---

AUSTIN KNUDSEN
Montana Attorney General
ROY BROWN
Assistant Attorney General
P.O. Box 201401
Helena MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
roy.brown2@mt.gov

ATTORNEYS FOR
RESPONDENTS-APPELLEES

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

STATEMENT OF THE ISSUE .......... 1

STATEMENT OF THE CASE .......... 1

I. Criminal proceedings .......... 1

A. Alternative theories .......... 1

B. Trial .......... 3

C. Direct appeal .......... 4

II. State court rejection of double jeopardy challenge .......... 8

A. Trial court's denial of motion to dismiss .......... 8

B. Montana Supreme Court's denial of supervisory control petition .......... 10

III. Denial and dismissal of § 2241 habeas petition .......... 12

STANDARDS OF REVEW .......... 17

SUMMARY OF THE ARGUMENT .......... 18

ARGUMENT .......... 20

I. As the district court correctly held, Wood fails to meet her burden to demonstrate entitlement to habeas relief under § 2241 because no double jeopardy violation has occurred .......... 20

A. Jeopardy never terminated, nor was Wood ever acquitted, as to direct deliberate homicide .......... 21

B. *Sanabria*, the only decision Wood has relied upon to support her argument, is inapplicable here .......... 23

C. Retrial under a remaining alternative mean of committing an offense does not implicate double jeopardy. .......... 25

D. The authorities Wood relies upon do not support her theory that an acquittal on one means of liability forecloses retrial on the other mean of liability ....................28

E. Under either *Blockburger* or the allowable unit of prosecution test, Wood has not been twice placed in jeopardy ....................30

F. The Montana Supreme Court did not create a new "elements plus collateral-estoppel" test when it cited *Sanabria* ....................33

G. As the district court noted, Wood has never relied upon an implied jury acquittal argument. Wood's repackaged argument based on her valued right to a particular tribunal fails ....................34

H. Wood changed her legal theory between the direct appeal and the double jeopardy challenge. Regardless, *Tower* is inapplicable here ....................36

I. Conducting a retrial based on alternative means not subject to an acquittal or terminating event does not frustrate the policy of double jeopardy ....................38

CONCLUSION ....................39

STATEMENT OF RELATED CASES ....................39

CERTIFICATE OF SERVICE ....................40

CERTIFICATE OF COMPLIANCE ....................41

# TABLE OF AUTHORITIES

## Cases

*Allen v. Roe*,
305 F.3d 1046 (9th Cir. 2002) ....................17

*Blockburger v. United States*,
284 U.S. 299 (1932) ....................passim

*Brown v. Ohio*,
432 U.S. 161 (1977) ....................20, 38

*Burks v. United States*,
437 U.S. 1 ....................22, 38

*Commonwealth v. Zanetti*,
910 N.E.2d 869 (Mass. 2009) ....................27, 28

*Williams v. Warden*,
422 F.3d 1006 (9th Cir. 2005) ....................28, 29

*Engle v. Isaac*,
456 U.S. 107 (1982) ....................18

*Evans v. Michigan*,
568 U.S. 313 (2013) ....................22

*Green v. United States*,
355 U.S. 184 (1957) ....................34

*Gouveia v. Espinda*,
926 F.3d 1102 (9th Cir. 2019) ....................17, 18

*Hoyle v. Ada Cnty.*,
501 F.3d 1053 (9th Cir. 2007) ....................17

*Justices of Boston Mun. Court v. Lydon*,
466 U.S. 294 (1984) ....................21, 38

*Lockhart v. Nelson*,
488 U.S. 33 (1988) ....................21

*Missouri v. Hunter*,
459 U.S. 359 (1983) .......... 30

*Oregon v. Kennedy*,
456 U.S. 667 (1982) .......... 36

*Richardson v. United States*,
468 U.S. 317 (1984) .......... 22, 36, 38

*Sanabria v. United States*,
437 U.S. 54 (1978) .......... passim

*Serfass v. United States*,
420 U.S. 377 (1975) .......... 21

*State v. Fuller*,
367 P.3d 1057 (Wash. 2016) .......... 14, 29, 30, 38

*State v. Gollehon*,
864 P.2d 249 (Mont. 1993) .......... 32-33

*State v. Kline*,
376 P.3d 132 (Mont. 2016) .......... 33

*State v. Ramos*,
184 P.3d 1256 (Wash. 2008) .......... 12, 14, 26

*State v. Tower*,
881 P.2d 1317 (Mont. 1994) .......... 1, 2

*State v. Wright*,
203 P.3d 1027 (Wash. 2009) .......... 28

*State v. Wood*,
561 P.3d 945 (Mont. 2024) .......... passim

*Stow v. Murashige*,
389 F.3d 880 (9th Cir. 2004) .......... 17, 18

*Terry v. Potter*,
111 F.3d 454 (6th Cir. 1997) .......... 14, 27

*Tibbs v. Florida*,
457 U.S. 31 (1982) .......... 22

*United States v. Garcia*,
938 F.2d 12 (2d Cir. 1991) ....................12, 14, 26, 27

*United States v. Hickey*,
367 F.3d 888 (9th Cir. 2004) ....................30

*United States v. Jose*,
425 F.3d 1237 (9th Cir. 2005) ....................21

*United States v. Keen*,
104 F.3d 1111 (9th Cir. 1996) ....................30, 32

*United States v. Sanders*,
591 F.2d 1293 (9th Cir. 1979) ....................35

*United States v. Scott*,
437 U.S. 82 (1978) ....................35

*United States v. Tateo*,
377 U.S. 463 (1964) ....................17, 39

*Whitney v. Craven*,
460 F.2d 1267 (9th Cir. 1972) ....................18

*Wilson v. Belleque*,
554 F.3d 816 (9th Cir. 2009) ....................18, 31

*Wood v. Knudsen,*
2026 U.S. Dist. Lexis 141625 (D. Mont. June 25, 2026) ....................13, 22, 34, 37

*Wood v. Twentieth Judicial District Court*,
573 P.3d 299 (Mont. 2025) ....................passim

## Other Authorities

Montana Code Annotated
§ 45-2-301 ....................3, 32
§ 45-2-302 ....................3, 31, 32
§ 45-2-302(3) ....................6, 31
§ 45-2-303 ....................6
§ 45-5-102(1)(a) ....................3, 31, 32

United States Code
Tit. 28, § 2241 ..........1, 12, 17, 18
Tit. 28, § 2254(d) ..........17

United States Constitution
Amend. V ..........20

## STATEMENT OF THE ISSUE

Whether—after a direct appeal whereupon the Montana Supreme Court acquitted Appellant on accountability for deliberate homicide but never terminated jeopardy on direct deliberate homicide—the U.S. District Court correctly denied and dismissed Appellant's 28 U.S.C. § 2241 petition on the basis that retrial on direct deliberate homicide did not implicate or violate the Double Jeopardy Clause.

## STATEMENT OF THE CASE

### I. Criminal proceedings

#### A. Alternative theories

In March 2019, the State of Montana charged Appellant/Petitioner Danielle Jeanette Wood with direct deliberate homicide under Mont. Code Ann. § 45-5-102(1)(a), alleging that she "purposely or knowingly caused the death of" her ex-boyfriend "Matthew LaFriniere, by shooting him with a firearm[]" on May 2, 2018. (5-ER-1072.)

In June 2020, the State filed a motion to amend the Information to "make clear" that the State was "also relying on a principal of accountability as stated in § 45-2-301, and § 45-2-302." (5-ER-1059.) The State offered it was "not required to give specific notice" of accountability under *State v. Tower*, 881 P.2d 1317

(Mont. 1994),[1] but did so to ensure the defendant was "fully apprised of the charge[.]" (5-ER-1059-60.)

Wood objected, arguing the State's proposed amendment did not allege any "new facts" to support the amendment. (5-ER-1047.) Wood recounted that she "had made statements about killing [LaFriniere][,]" the "bullet obtained from [LaFriniere]'s body [was] consistent with the caliber firearm purchased by [Wood][,]" her phone records suggested that she "went to [LaFriniere]'s home on [the date LaFriniere was killed][,]" she was "in a custody dispute over their daughter[,]" a witness saw Wood at LaFriniere's residence on the night of the murder, and other "witnesses stated they saw [Wood] leave her home and return a short time later, and [Wood] stated she was going to [LaFriniere]'s residence." (5-ER-1049-50.) But Wood argued there was "no allegation" in the State's amended affidavit that another person aided or abetted her to support the accountability theory. Wood explained the State had "not disclosed any evidence suggesting another person might be involved, and defense is not aware of another person who has been charged with any offense in connection with [LaFriniere]'s

[1] In *Tower*, the Montana Supreme Court considered a situation where accountability was not referenced in the charging document. The court concluded that because "accountability is not a separate offense" that "due process did not require that the State set forth a theory of accountability in the information." *Tower*, 881 P.2d at 1320.

death." (5-ER-1050.) The trial court summarily granted the State's motion. (5-ER-1039.)

The State filed an Amended Information, contending that Wood committed deliberate homicide by either "shooting him with a firearm" or "being legally accountable for the commission of the offense of [d]eliberate homicide." (5-ER-1036) (citing Mont. Code Ann. § 45-5-102(1)(a) (deliberate homicide), Mont. Code Ann. §§ 45-2-301, -302 (accountability)).

**B. Trial**

At the close of the State's case-in-chief, Wood moved to dismiss the accountability charge, arguing that insufficient evidence existed because the State did not name any accomplice or present any evidence that Wood aided or abetted anyone else in committing the homicide. (5-ER-993-94, 997.) The trial court denied the motion, explaining that it was possible from circumstantial evidence that Wood's current boyfriend, Drew Stobie, could have participated in the homicide. (5-ER-997-99.) However, in closing argument, the State disclaimed Stobie as a possible suspect. (5-ER-1008.)

Wood proposed a specific unanimity instruction along with a verdict form that would have specified which alternative theory formed the basis of its unanimous verdict. (5-E-1022, 5-ER-1035.) The trial court ultimately rejected Wood's proposal and gave a general verdict form which allowed the jury to find

Wood guilty or not guilty of deliberate homicide without differentiating between the direct liability and accountability theories. (5-ER-1002-03.) Additionally, while the trial court gave a general unanimity instruction that the jury must agree upon the acts, it did not adopt Wood's proposal to distinguish between the two theories. (5-ER-984.)

Wood was found guilty of deliberate homicide. (4-ER-956.) She was sentenced to 100 years in prison without parole. (CR 1-15 at 2.)

### C. Direct appeal

On direct appeal, Wood argued it was error for the trial court to "allow[] an accountability jury instruction" without the State "ever putting on evidence that a defendant aided another person" in "carrying out the charged crime." (SER-46.)[2] Wood argued, "[t]o earn an accountability jury instruction, the State must present sufficient evidence to prove every element of accountability beyond a reasonable doubt." (SER-48.) Wood claimed the evidence was insufficient for accountability because "the State never named an accomplice and actively refuted any suggestion

[2] Wood raised five other claims alleging trial error not relevant here including: (1) trial counsel was ineffective for not ensuring a "mere presence" jury instruction was given; (2) the use of expert testimony regarding cell phone location evidence was improper; (3) a demonstrative exhibit was improperly augmented on the eve of trial; (4) the prosecutor committed misconduct by suggesting Wood prove her innocence; and (5) cumulative error occurred. (SER-12-13.) Wood did not otherwise challenge the sufficiency of the evidence for direct deliberate homicide. (*See* SER-3-95.)

that [Wood] acted in concert with Drew Stobie, the alternative suspect named by the defense." (*Id*.)

Wood also argued that accountability was a distinct legal theory from deliberate homicide:

> Montana's accountability statutes, §§ 45-2-301 and 302 set forth "two theories of criminal culpability—personal wrongdoing and accountability." These concepts are distinct. *See State v. Kline*, 2016 MT 177, ¶ 14, 384 Mont. 157, 376 P.3d 132. In *Kline*, this Court explained, "[a]ccountability cannot be applied . . . where [a] participant is responsible for his or her own conduct and independently commits the offense." *Kline*, ¶ 21. Here, the State did not present evidence supporting a separate accountability theory.

(SER-50.)

Wood argued that *Tower* was inapplicable for legal sufficiency, explaining "The State claimed *Tower* gave it authority for the instruction, but *Tower* concerns formal pleading requirements, not sufficiency of the evidence." (SER 46-47.) Wood argued that "[n]othing in *Tower* permits an accountability instruction where there is no evidence of aiding and abetting someone else." (SER-47.)

Wood argued she was "entitled to a new trial where accountability is not included when there was no alleged accomplice," and otherwise asked for a new trial on her other raised issues. (SER-92-93.)

The Montana Supreme Court considered: "Whether the [trial] court erroneously submitted the State's alternative theory of criminal liability (Accountability for Deliberate Homicide) to the jury without sufficient supporting

evidence[.]" *State v. Wood*, 561 P.3d 945, 948 (Mont. 2024) (*Wood I*). The court also considered the effect of its resolution of the first issue on the given jury instructions and verdict form. *Id.*

The Montana Supreme Court recounted the State's evidence supporting the direct deliberate homicide theory, including: Wood's wish to regain custody of her daughter, her anger with LaFriniere, her threat that she intended to kill LaFriniere, her placement at the murder scene through witness testimony and expert testimony regarding cellular location data, proof that Wood purchased the kind of gun that was used to inflict LaFriniere's fatal injuries, and incriminating written statements left in Wood's car and on her bathroom mirror. *Wood I*, 561 P.3d at 949-50, 952-53 (Mont. 2024).

However, as to "accountability to deliberate homicide[,]" the court explained that the theory required proof that "the accused and some other person or persons affirmatively acted with and *in furtherance of* a '*common purpose*' before or during the homicide to aid or abet the commission of a deliberate homicide." *Id.* at 960 (citing Mont. Code Ann. §§ 45-2-302(3) and -303). The court observed "the State presented no evidence" that "some third party shot and killed the decedent LaFriniere, or that Wood actively assisted some other person in the planning or commission of the shooting of LaFriniere, with and in furtherance of *their* common purpose to cause his death." *Id.* at 961. And no evidence was presented that

another person "was in fact present at the crime scene to shoot LaFriniere, or in fact before-hand or concurrently collaborated or acted in common purpose" with Wood. *Id*. at 962. The court reasoned that the State effectively "disclaimed" that Stobie, or anyone else, was involved in the killing. *Id*. The court held "that the [trial court] erroneously submitted the State's alternative deliberate homicide by accountability theory for jury consideration and determination." *Id*.

The court further ruled that *Tower* was "clearly distinguishable and of no consequence here[]" because *Tower* concerned the sufficiency of a charging document, not the sufficiency of the evidence. *Id*. at 958-59.

The court determined that—given that instructing the jury on the accountability theory was error—"the [trial court's] combined instructional and verdict form error was reversible error in violation of Wood's fundamental constitutional rights to due process of law." *Wood I*, 561 P.3d at 964. The court noted that "[d]ue to the above-noted dearth of State evidence and argument at trial in support of its alternative deliberate homicide by accountability theory, it is likely but not certain . . . that the jury unanimously found Wood guilty of direct deliberate homicide." *Id*. But the court reasoned that the accountability theory "should not have been placed before the jury in the first instance," and was improperly stressed as an option for conviction in closing argument. *Id*.

Accordingly, the Montana Supreme Court "reversed[] and remanded for a new trial in the State's discretion." *Id.* at 965.

## II. State court rejection of double jeopardy challenge

### A. Trial court's denial of motion to dismiss

Criminal proceedings were reinstituted pending retrial. (CR 1-19.) The prosecution notified the trial court that, given the Montana Supreme Court's "eliminat[ion]" of "that accountability theory officially," it was "proceeding strictly on the deliberate theory." (4-ER-844.)

Wood moved to dismiss the deliberate homicide charge, arguing that "an unreviewable acquittal took place" by the Montana Supreme Court in *Wood I* for double jeopardy purposes. (4-ER-862.) Wood argued that the "theories of accountability and responsibility have been consistently treated as the same offense in Montana case law." (4-ER-863.) Wood argued that, under "*Tower*" that "accountability is not a separate or different offense" from the underlying offense. (4-ER-864.) Wood further claimed that, under *Sanabria v. United States*, 437 U.S. 54 (1978), an acquittal on one of two competing theories of prosecution for the same offense bars a successive prosecution on the unacquitted theory. (4-ER-864.) While Wood acknowledged that the State was now limiting "its case to its first theory" that Wood "personally shot Mr. LaFriniere" for retrial, (4-ER-860), she

argued that "retrying the defendant on a theory of 'responsibility' is not substantively different than retrying the defendant on a theory of 'accountability.'" (4-ER-864-65.)

The State first argued in response that the accountability reversal in *Wood I* was not an acquittal but rather concerned trial instructional error. (4-ER-762.) Alternatively, the State explained that the Montana Supreme Court "did not find that all theories of deliberate homicide were unsupported by sufficient evidence[,]" but rather limited its holding to the accountability theory. (4-ER-761-62.)

At a hearing, the trial court first observed that a "common-sense thinking of double jeopardy" would be that Wood "could not be tried again on the question of accountability." (4-ER-813.) But the trial court questioned whether in such a circumstance, "are you acquitted on nonaccountability?" (*Id.*)

Wood argued that what "*Sanabria* makes clear" is that "double jeopardy is concerned with offenses and not necessarily theories. And so if it's the same offense, that's the end of the matter." (4-ER-837.) Wood argued that because the Montana Supreme Court had characterized accountability and direct homicide as "not technically separate offenses[,]" they are the "same offense[]" for double jeopardy purposes. (*Id.*)

The State responded that the scope of the acquittal only encompassed accountability, and the Montana Supreme Court did not make "any comment as to

the sufficiency of the evidence that existed to support the conviction for deliberate homicide." (4-ER-825-26.)

After the hearing, the trial court denied Wood's motion to dismiss, explaining that the State's ability to proceed to retrial on direct deliberate homicide was within the Double Jeopardy boundaries that had "already been set by the Montana Supreme Court and the State Legislature." (4-ER-807.)

### B. Montana Supreme Court's denial of supervisory control petition

Wood petitioned for supervisory control in the Montana Supreme Court. The parties repeated their arguments presented in the trial court, disputing the effect of *Sanabria* and the effect of *Wood I*'s reversal on the accountability theory. (*See* 4-ER-726-732, 4-ER-704-05, 4-ER-708-11.)

The Montana Supreme Court rejected the State's argument that it only reversed in *Wood I* based on trial instructional error. *Wood v. Twentieth Judicial District Court*, 573 P.3d 299, 302-03 (Mont. 2025) (*Wood II*). The court explained that "our decision was grounded on the dearth of trial evidence proving the second element of accountability, i.e., that Wood and 'some other person or persons affirmatively acted with and *in furtherance of* a '*common purpose*' before or during to contributorily aid or abet the commission of" deliberate homicide. *Wood II*, 573 P.3d at 302-03. The court explained its reversal of Wood's first conviction amounted to a "ruling that the State's proof was insufficient to establish

criminal liability for deliberate homicide by accountability." *Id*. at 303. Accordingly, "any attempt to retry Wood for deliberate homicide by accountability would violate Wood's right to avoid double jeopardy." *Id*.

However, the court reasoned, "Wood's efforts to invoke double jeopardy to wholly prohibit a second trial for deliberate homicide, including by *direct* liability, are unavailing." *Wood II*, 573 P.3d at 303. The court noted that in *Sanabria*, the defendant was acquitted as to the entire count without a specification of a theory, and he was also acquitted due to insufficient proof of an element shared by both theories of liability. *Id*. at 303-04. In contrast, the court concluded:

> In this case, we did not reverse Wood's conviction because there was insufficient evidence that she independently committed the crime of deliberate homicide. Rather, we reversed Wood's conviction only because it was possible the jury found her guilty of the accountability alternative, which was not supported by the evidence. *Wood I*, ¶ 50. We acknowledged it was potentially possible that "the jury unanimously found Wood guilty of direct deliberate homicide." *Wood I*, ¶ 50. Accordingly, allowing retrial under the circumstances of this case serves society's interest in prosecuting the accused while protecting the accused's right to a fair trial. *United States v. Tateo*, 377 U.S. 463, 466, 84 S. Ct. 1587, 1589, 12 L. Ed. 2d 448 (1964).

*Id*. at 304.

The Montana Supreme Court also distinguished the elements of the two different theories. The court explained that, although not "technically [a] separate and distinct offense apart from direct deliberate homicide," accountability to deliberate homicide by aiding or abetting another "requires proof beyond a

reasonable doubt that . . . the accused and some other person or persons affirmatively acted with and in furtherance of a common purpose before or during the homicide to aid or abet the commission of a deliberate homicide." *Id*. (citing *Wood I*, 561 P.3d at 960).

Finally, the court relied on persuasive authority from the Supreme Court of Washington in *State v. Ramos*, 184 P.3d 1256, 1259 (Wash. 2008), adopting the *Ramos* Court's holding that acquittal of an alternative mean on appeal does not bar retrial on the remaining valid alternative mean under double jeopardy principles. *Id*. at 304. The Court also cited the Second Circuit's decision in *United States v. Garcia*, 938 F.2d 12, 14 (2d Cir. 1991) as supporting authority on the alternative means principle. *Id.* at 303.

The Montana Supreme Court concluded that "[d]ouble jeopardy does not prohibit a second prosecution of Wood for deliberate homicide by direct liability." *Id.* at 304-05. The court affirmed the trial court's order denying Wood's motion to dismiss. *Id.* at 305.

## III. Denial and dismissal of § 2241 habeas petition

After Wood's double jeopardy arguments were rejected by the trial court, and the Montana Supreme Court rejected Wood's supervisory control petition, Wood next filed a 28 U.S.C. § 2241 petition in the federal district court. Wood

again claimed that deliberate homicide and accountability were treated as the "same offense" for double jeopardy purposes pursuant to *Tower*. (2-ER-211.) She argued *Sanabria* was applicable and urged the federal district court to apply the "allowable unit of prosecution" test rather than the *Blockburger*[3] test, claiming that the "allowable unit of prosecution" test foreclosed separate theories. (2-ER-216.) Wood finally argued that the Montana Supreme Court wrongly divined an "elements plus collateral-estoppel test" by importing collateral estoppel principles into a double jeopardy analysis. (2-ER-213.)

The federal district court first rejected Wood's argument that she was acquitted of deliberate homicide, concluding that "Wood cannot establish the existence of a [double jeopardy] terminating event as to homicide by direct liability." *Wood v. Knudsen*, No. CV 25-201-M-BMM, 2026 U.S. Dist. Lexis 141625 at *15 (D. Mont. June 25, 2026) (Order). The district court noted that the Montana Supreme Court only found the evidence insufficient "to support conviction on a theory of deliberate homicide by accountability[]" but it also "expressly determined, however, that the jury could have, and very well may have, unanimously found Wood guilty of direct deliberate homicide." *Id*. (citing *Wood I*, 562 P.3d at 964; *Wood II,* 573 P.3d at 304).

---

[3] *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

But this was "not the only manner in which Wood's double jeopardy claim fails." *Id*. *15. Summarizing persuasive authority from the Second Circuit in *Garcia*, 938 F.2d at 13-16, and citing other state and federal authorities (*Terry v. Potter*, 111 F.3d 454, 459-60 (6th Cir. 1997); *Ramos*, 184 P.3d 1256; *State v. Fuller*, 367 P.3d 1057 (Wash. 2016)), the district court concluded that "[a] reading of *Garcia* illustrates and supports the reasoning of the Montana Supreme Court's decision that double jeopardy does not prevent the state from retrial on an alternative mean of liability even when a defendant's conviction was reversed on appeal as to of the other mean of liability." *Id*. *16.

Next, echoing the Montana Supreme Court's analysis, the district court rejected Wood's extrapolation from *Sanabria* that "acquittal on the accountability liability functions as an absolute bar to any further prosecution of a theory of direct liability[.]" *Id*. *19. The court noted that *Sanabria* concerned a situation where the defendant was charged with a single offense, conducting an illegal gambling business, by engaging in horse betting and numbers betting. *Id*. And after the trial court in *Sanabria* entered a judgment of acquittal based on insufficient evidence the defendant engaged in horse betting, the Supreme Court held that Double Jeopardy barred a second trial. The district court explained the Supreme Court's reasoning that "the indictment charged only one offense, conducting an illegal gambling business, and the judgment of acquittal was entered on the entire count,

without distinguishing between theories of liability." *Id*. *20 (citing *Sanabria*, 437 U.S. at 66-67).

The district court additionally reasoned that *Sanabria* was distinguishable because the petitioner in *Sanabria* was fully acquitted at the trial level, but Wood was not. The court explained that Wood was "convicted at trial after the jury was instructed on two alternative means by which Wood could have committed the underlying offense." *Id*. *21. The court explained that the Montana Supreme Court in *Wood I* "expressly addressed" the trial court's error in submitting the "State's alternative theory of accountability to deliberate homicide, by aiding and abetting, to the jury for consideration[]" but there was no argument on appeal made, nor any corresponding finding, "there was insufficient evidence presented to the jury to support giving an instruction that Wood had independently or directly committed the homicide." *Id*. (citing *Wood II*, 573 P.3d at 303). The court reasoned the "Montana Supreme Court gave ample consideration to and drew a distinction between the two theories of liability." *Id*. And "[u]nlike the trial judge's entry of a full acquittal on the illegal gambling count in *Sanabria*," the "Montana Supreme Court's decision focused specifically on the accountability theory of liability." *Id*. *22. Thus, "no declaration" was made for "insufficient evidence regarding direct liability." *Id*.

The federal district court next rejected Wood's argument to apply the "allowable unit of prosecution" test, concluding Wood was mistaken that accountability and direct homicide violated a single statutory provision based on the same act. The court noted that "Wood was charged with committing deliberate homicide in one of two alternative statutory matters." *Id*. *25. Applying the *Blockburger* test, the court concluded that "direct deliberate homicide and accountability criminalize different conduct and contain different elements." *Id*. *26. After analyzing the separate statutes, the court reasoned that "[d]eliberate homicide requires a direct causation element; an individual must physically commit the offense[,]" but "[d]eliberate homicide by accountability requires one to conspire or encourage another to participate in the commission of the homicide." *Id*. *26-27. Thus, "[e]ach offense requires proof of a fact that the other does not." *Id*. *27.

The district court disposed of Wood's argument that the Montana Supreme Court created a new "elements plus collateral estoppel" test, explaining that the state court was merely "explaining why *Sanabria* was not applicable to Wood's case." *Id*. *25. The court noted that "homicide by accountability and direct homicide involve different elements and statutory provisions." *Id*.

The court also observed that Wood had never, and was not raising now, an argument surrounding a trial level "implicit acquittal[.]" *Id*. *19. Regardless, "an

implicit acquittal did not occur because Wood was undisputably convicted of homicide." *Id*.

The district court denied and dismissed Wood's § 2241 petition, ruling that the "Double Jeopardy Clause does not bar Wood from being retried on the direct deliberate homicide charge." *Id*. *12. The court concluded that Wood failed to establish any double jeopardy violation and "[a]llowing a retrial of Wood on a theory of direct liability for deliberate homicide protects 'the right of an accused to be given a fair trial,' as well as 'the societal interest in punishing one whose guilt is clear after [she] has obtained such a trial.'" *Id*. *27 (citing *Tateo*, 377 U.S. at 466).

## **<u>STANDARDS OF REVEW</u>**

Because this Court's review of Wood's petition proceeds under 28 U.S.C. § 2241, the deference owed to a state court under AEDPA, 28 U.S.C. § 2254(d), is not applicable. *Gouveia v. Espinda*, 926 F.3d 1102, 1111 (9th Cir. 2019). Under the traditional pre-AEDPA standard of review, factual findings are viewed with a presumption of correctness and conclusions of law are reviewed de novo. *Hoyle v. Ada Cnty.*, 501 F.3d 1053, 1058 (9th Cir. 2007) (analyzing § 2241 habeas petition in a double jeopardy challenge); *see also Allen v. Roe*, 305 F.3d 1046, 1050 (9th Cir. 2002); *Stow v. Murashige*, 389 F.3d 880, 888 (9th Cir. 2004).

Section 2241 confers jurisdiction for a habeas petition raising a double jeopardy challenge to the petitioner's pending retrial in state court. *Stow*, 389 F.3d at 885-87; *Wilson v. Belleque*, 554 F.3d 816, 821 (9th Cir. 2009); *Gouveia*, 926 F.3d at 1108-09.

The state prisoner bears the burden of demonstrating entitlement to habeas relief. *Engle v. Isaac*, 456 U.S. 107, 134-35 (1982) (burden of justifying habeas relief rests with the prisoner); *accord Whitney v. Craven*, 460 F.2d 1267 (9th Cir. 1972) (per curiam).

## SUMMARY OF THE ARGUMENT

As the trial court, the Montana Supreme Court, and the federal district court correctly concluded, double jeopardy is not offended by the State's retrial on direct deliberate homicide after jeopardy terminated on the alternative charge of accountability for deliberate homicide via an appellate acquittal. Jeopardy never terminated on direct deliberate homicide because there was never any declaration of insufficient evidence regarding direct liability. On this basis alone, Wood has not met the conditions sufficient for invoking and applying the protections of the Double Jeopardy Clause.

*Sanabria* does not compel a different result. *Sanabria* concerned a trial-level acquittal on an entire single count with two theories. The trial level

acquittal constituted a full acquittal on the single count because the judgment of acquittal was entered on the entire count, without distinguishing between the two theories of liability. But here, Wood was convicted at trial, and the scope of the appellate acquittal in *Wood I* was clearly distinguished and directed toward accountability, not direct deliberate homicide.

In the absence of any authority identified by Wood from the Supreme Court supporting Wood's position that double jeopardy is violated in this circumstance, the Montana Supreme Court and the district court reasonably relied upon persuasive authorities that have addressed and rejected similar claims. These authorities have held that when a jury renders a guilty verdict as to a single crime, but one of the alternative means for committing that crime is later held to be invalid on appeal, double jeopardy does not bar retrial on the remaining, valid alternative mean. Wood does not identify any constitutional error in the state and federal courts' reliance on these authorities.

Direct deliberate homicide and accountability criminalize different conduct and contain different elements. Deliberate homicide requires a direct causation element. Deliberate homicide by accountability requires one to conspire or encourage another to participate in the commission of a homicide. Under *Blockburger*, double jeopardy is not offended.

Finally, accepting Wood's attempt to escape retrial for deliberate homicide—for which there was never any valid appellate acquittal or termination—would not serve the interests or policy of the Double Jeopardy Clause. The facts underlying the acquittal for accountability are no longer at issue and will not be relitigated. The people of Montana have a societal interest in a fair and final vindication through retrial on deliberate homicide. Allowing retrial on direct deliberate homicide will not only serve society's interest in ensuring the guilty are punished; it also protects Wood's right to a fair trial.

## ARGUMENT

### I. As the district court correctly held, Wood fails to meet her burden to demonstrate entitlement to habeas relief under § 2241 because no double jeopardy violation has occurred.

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The prohibition bars against: (1) a successive prosecution for the same offense after a defendant has been previously acquitted or convicted; (2) relitigation of an issue that has been resolved in the defendant's favor in a prior prosecution; and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

Jeopardy attaches when a defendant is “put to trial.” *Serfass v. United States*, 420 U.S. 377, 388 (1975). But “[t]here must also be a jeopardy terminating event, most commonly an acquittal or a final judgment of conviction.” *United States v. Jose*, 425 F.3d 1237, 1240 (9th Cir. 2005) (collecting cases).

“Even though jeopardy has attached to, and seemingly terminated on, an offense for which a defendant has been tried and convicted, the defendant may still be retried for the same offense, consistently with the Double Jeopardy Clause, when retrial is pursuant to a reversal on appeal.” *Jose*, 425 F.3d at 1241 (citing *Ball v. United States*, 163 U.S. 662, 671-72 (1896)). In such a case, jeopardy is said to “continue” on the offense upon retrial. *See Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 308 (1984). However, when a “defendant’s conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury’s verdict, the Double Jeopardy Clause bars a retrial on the same charge.” *Lockhart v. Nelson*, 488 U.S. 33, 39 (1988).

### A. Jeopardy never terminated, nor was Wood ever acquitted, as to direct deliberate homicide.

As the Montana Supreme Court and the district court correctly concluded, jeopardy never terminated on direct deliberate homicide when the Montana Supreme Court held in *Wood I* that the evidence was insufficient for accountability.

An acquittal is "a resolution . . . of some or all of the factual elements of the offense charged." *Sanabria*, 437 U.S. at 71 (citing *Lee v. United States*, 432 U.S. 23, 30 n.8 (1977) (in turn quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977)).) An acquittal includes a "ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." *Evans v. Michigan*, 568 U.S. 313, 318-19 (2013) (collecting cases). A reversal based on insufficient evidence bars retrial because "it means that no rational factfinder could have voted to convict the defendant." *Tibbs v. Florida*, 457 U.S. 31, 41 (1982). Here, the Montana Supreme Court's insufficiency ruling amounted to a legal conclusion that "criminal culpability ha[s] not been established[]" for accountability, *Evans*, 568 U.S. at 324 (citing *Burks v. United States*, 437 U.S. 1, 10), thus the acquittal bars retrial on that theory of culpability.

For double jeopardy principles to apply and prevent Wood's retrial, the original jeopardy on the disputed charge must have terminated. *See Richardson v. United States*, 468 U.S. 317, 325 (1984). As the federal district court correctly held, "Wood cannot establish the existence of a terminating event as to homicide by direct liability." (Order, *15.) The Montana Supreme Court expressly determined the jury may have unanimously found Wood guilty of direct deliberate homicide. And the scope of the acquittal in *Wood I* only concerned accountability.

Accordingly, Wood was never acquitted of direct deliberate homicide, nor did jeopardy terminate on direct deliberate homicide.

### B. *Sanabria*, the only decision Wood has relied upon to support her argument, is inapplicable here.

Wood has consistently relied upon a single Supreme Court decision, *Sanabria*, to support her argument that double jeopardy precludes retrial here. However, as the Montana Supreme Court and the district court correctly determined, *Sanabria* is distinguishable and does not stand for the double jeopardy principle Wood espouses.

In *Sanabria*, a single-count indictment charged the defendant with involvement in an illegal gambling business that concerned numbers betting and horse betting. 437 U.S at 57. The trial court struck all evidence of the numbers betting because the indictment laid out the wrong section of state law. *Id*. at 58-59. With evidence of the numbers betting excluded, Sanabria moved for a judgment of acquittal, "arguing that there was no evidence of his connection with horse-betting activities." *Id*. at 59. The trial court granted the motion, finding that the government had not presented sufficient evidence to connect Sanabria with the horse-betting operation. *Id*. The trial court then entered a judgment of acquittal on the single count of being engaged in an illegal gambling business. *Id*. The government sought to retry the defendant on that portion of the indictment related to numbers betting. *Id*. at 61.

The United States Supreme Court considered whether—following the trial court's entry of a mid-trial judgment of a full acquittal on a single count indictment—the government could subject the defendant to a retrial on the same facts using a different legal theory, and concluded it could not. *Sanabria*, 437 U.S. at 64-65. The *Sanabria* Court examined the trial court's dismissal order and reasoned an acquittal occurred because "[t]he judgment of acquittal was entered on the entire count and found petitioner not guilty of the crime of violating [the illegal gambling business statute], without specifying that it did so only with respect to one theory of liability[.]" *Id*.

In denying Wood's petition for supervisory control in *Wood II*, the Montana Supreme Court distinguished this case from *Sanabria* where the acquittal was done "'without specifying that it did so only with respect to one theory of liability[.]'" *Wood II*, 573 P.3d at 303 (*quoting Sanabria*, 437 U.S. at 67). The court explained its acquittal only concerned the accountability theory and "Wood did not raise, nor did we consider or address, the issue of whether there was insufficient evidence to prove Wood acted independently in carrying out the offense." *Id*. Additionally, the court explained, while "the defendant in *Sanabria* was acquitted due to insufficient proof of an element shared by both theories of liability[,]" common elements shared between the theories of deliberate homicide and accountability "were not at issue in *Wood I*." *Id*. The court reasoned that its analysis "in *Wood I*

bears only on the absence of proof as to the second accountability element" which was "unique" to the accountability theory. *Id*. at 304. Accordingly, the Montana Supreme Court concluded that the scope of the acquittal in *Wood I* only concerned accountability, not direct deliberate homicide. *Id*.

As the federal district court correctly held, *Sanabria* was further distinguishable because the petitioner in *Sanabria* was fully acquitted, but Wood was not. The *Sanabria* trial-level acquittal concerned the entire count, which was dispositive. Here, Wood was convicted, not acquitted, at trial. As the Montana Supreme Court correctly concluded in *Wood II*, the scope of the appellate termination in *Wood I* only concerned accountability, not direct homicide. As the district court reasoned, there was never any declaration of insufficient evidence regarding direct liability.

### C. Retrial under a remaining alternative mean of committing an offense does not implicate double jeopardy.

In absence of any Supreme Court precedent to the contrary, the Montana Supreme Court did not err in adopting the following "alternative means" principle from the Washington Supreme Court in *Ramos*:

> The alternative means principle dictates that when a jury renders a guilty verdict as to a single crime, but one of the alternative means for committing that crime is later held to be invalid on appeal and the record does not establish that the jury was unanimous as to the

> valid alternative in rendering its verdict, double jeopardy does not bar retrial on the remaining valid alternative mean.

*Wood II*, 573 P.3d at 304 (citing *Ramos*, 184 P.3d at 1259). This principle holds true "even when one alternative mean has been reversed on appeal due to a finding of insufficient evidence, a finding that has the same double jeopardy implications as an outright acquittal in other circumstances." *Ramos* at 1259.

In addition to Washington, Montana has joined other jurisdictions that have ruled that proceeding to retrial on an alternative means not implicated by a prior acquittal does not violate double jeopardy. For example, in *Garcia*, a grand jury indicted Robert and Jane Garcia of bribery, receiving illegal gratuities, and both substantive and conspiracy counts of extortion. The alleged extortion was premised on two theories: (1) extortion by wrongful use of fear, and (2) extortion under color of official right. At the close of the evidence at trial, the Garcias moved to dismiss the first theory for insufficient evidence. The district court denied the motion and submitted both theories to the jury. *Garcia*, 938 F.2d at 13. The jury acquitted the Garcias of the bribery and gratuity charges but convicted them of the substantive and conspiracy charges of extortion. The Garcias appealed, arguing that the district court should not have submitted the extortion by wrongful use of fear theory to the jury because there was insufficient evidence. The Second Circuit agreed. Because the verdict form was ambiguous and the court

could not discern on which theory the jury determined guilt, it remanded for further proceedings.

The Garcias then moved the district court to bar the retrial on double jeopardy grounds and to dismiss the remaining counts of the indictment. The district court denied the motion. The Garcias again appealed. *Garcia*, 938 F.2d at 14. While the Second Circuit noted that the government could not retry the Garcias for extortion based on wrongful use of fear, because it had determined the government presented insufficient evidence for that theory, the Garcias could be retried for extortion based on a theory of color of official right. *Id.*; *see also Terry*, 111 F.3d at 459 (citing *Garcia* and reasoning that "if a charge of murder is brought under two legal theories, such as direct and accomplice liability, or two factual theories, such as shooting and stabbing, the reversal of a conviction based on only one of the theories may not bar retrial under the other theory.").

In *Commonwealth v. Zanetti*, 910 N.E.2d 869 (Mass. 2009), the Massachusetts Supreme Court considered an issue very similar to the issue Wood raises here. Zanetti was indicted on a charge of murder in the first degree. At the jury trial, the commonwealth proceeded against Zanetti on a theory of deliberate premeditation based on both principal and joint venture liability theories. The jury convicted Zanetti of murder in the first degree as a joint venturer. On appeal, Zanetti argued there was insufficient evidence that he deliberately premeditated the

murder as part of a joint venture. *Id.* at 871. The court agreed. *Id.* at 874-77. But the court further concluded there was sufficient evidence to support Zanetti's conviction based on principal liability, so the Commonwealth could retry Zanetti solely as the principal. *Id.* at 878-79.

These decisions strongly support the Montana Supreme Court's legal conclusion in *Wood II* that double jeopardy does not bar retrial on direct deliberate homicide. The Montana Supreme Court in *Wood I* never passed on Wood's guilt or innocence for murdering her ex-boyfriend, it merely addressed the evidence as it related to the accountability theory. Double jeopardy is not implicated here.

### D. The authorities Wood relies upon do not support her theory that an acquittal on one means of liability forecloses retrial on the other mean of liability.

Apart from *Sanabria*, Wood relies on two decisions to support her theory that double jeopardy prevents the State from retrial: one from this Court, *Williams v. Warden*, 422 F.3d 1006 (9th Cir. 2005), and one from the Supreme Court of Washington, *State v. Wright*, 203 P.3d 1027 (Wash. 2009). (Doc. 3.1 at 45-46.) But neither *Williams* nor *Wright* held double jeopardy principles to exclude retrial on an alternative mean of liability when a defendant is acquitted of the other mean of liability on appeal, and the scope of the appellate acquittal does not include the alternative mean being retried.

The *Williams* Court only held that it does not offend double jeopardy for the government to pursue alternative theories of culpability in a criminal case and have the jury convict under one and acquit under the other. *Williams*, 422 F.3d at 1010-11. This Court rejected Williams' argument that "by having the jury return verdicts on each theory, her acquittal under one theory barred conviction under the other." *Id*. at 1007. This Court explained that a simultaneous conviction and acquittal was not an implicit acquittal. *Id*. at 1012. Here, unlike in *Williams*, the jury was not given a dual verdict form, nor has Wood raised an "implicit acquittal" argument before this Court. *See Williams* at 1011. Nor is this situation like *Sanabria* where the acquittal encompassed the whole offense at the trial level. *See Sanabria*, 437 U.S. at 71-72.

Wood's reference to the Washington Supreme Court's *Wright* decision citing *Sanabria* for the proposition that "[w]hen a proceeding ends in an undisturbed verdict or verdict equivalent on any alternative, the State may not prosecute the defendant on any other means of committing the same offense[]" also fails. In *Fuller*, 367 P.3d at 1062, the Washington Supreme Court disapproved that same statement from *Wright* as "clearly an overstatement of *Sanabria*'s holding" and "dicta" and as contrary to more recent Washington Supreme Court authority. *Id*. The Court explained that *Sanabria* was also distinguishable because "it contemplated further prosecution after a full acquittal

on the offense as a whole." *Id*. Notably, the *Fuller* Court also distinguished *Sanabria* in the same "two key ways" that the Montana Supreme Court did in *Wood II*. *Id.*

### E. Under either *Blockburger* or the allowable unit of prosecution test, Wood has not been twice placed in jeopardy.

Where "a single act or transaction is alleged to have resulted in multiple violations of the same statutory provision, the Supreme Court has stated that the proper inquiry involves the determination of '[w]hat Congress has made the allowable unit of prosecution.'" *United States v. Keen*, 104 F.3d 1111, 1118 (9th Cir. 1996) (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218 (1952)). But where the same act or transaction constitutes a violation of two distinct statutory provisions, courts apply the test articulated in *Blockburger* to determine whether the two offenses are the "same offense" for double jeopardy purposes. *United States v. Hickey, 367 F.3d* 888, 891-92 (9th Cir. 2004) (citing Blockburger, 284 U.S. at 304). Thus, when a single act is alleged to have violated "two distinct statutory provisions," whether the provisions are in the same statute or different statutes, courts apply the *Blockburger* test. *See Missouri v. Hunter*, 459 U.S. 359 (1983); *Hickey*, 367 F.3d at 891-92.

*Blockburger* applies here because this case concerns "two distinct statutory provisions" relating to the two applicable theories. Thus, "the test to be applied" is

"whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. And "if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Id.* Direct deliberate homicide and accountability criminalize different conduct and contain different elements. Direct deliberate homicide requires a person to purposely or knowingly "cause[] the death of another human being[.]" Mont. Code Ann. § 45-5-102(1)(a). The direct causation of death element in deliberate homicide is not present in accountability. *See* Mont. Code Ann. § 45-2-302. Accountability is established when "either before or during the commission of an offense with the purpose to promote or facilitate the commission, the person solicits, aids, abets, agrees, or attempts to aid the other person in the planning or commission of the offense." Mont. Code Ann. § 45-2-302(3). Thus, deliberate homicide by accountability requires one to conspire or encourage another to participate in the deliberate homicide. This element is not present in direct deliberate homicide. Thus, both statutes contain proof of an additional fact that the other does not, thus the two statutes do not concern the same offense for double jeopardy purposes. *See, e.g.*, *Wilson*, 554 F.3d at 829 (contrasting the elements of intentional murder to felony murder

under Blockburger and reasoning that intentional murder requires intentionally causing a death while felony murder only details assistance to another person.).

The "allowable unit of prosecution" test likely does not apply here. *See, e.g., Keen*, 104 F.3d at 1118 (applying the test in a count multiplicity situation where a single transaction led to Keen being unconstitutionally sentenced twice for simultaneously possessing a firearm and ammunition). This is not a count multiplicity situation. Wood's conviction did not result in cumulative or multiple punishments for the same conduct. The State never alleged that Wood committed *both* deliberate homicide and accountability or that Wood committed the same statutory violation twice simultaneously.

But even assuming the "allowable unit of prosecution" test from *Sanabria* applies, the *Sanabria* Court explained that double jeopardy forecloses dividing a crime into "'discrete bases of liability' *not defined as such by the legislature*." *Sanabria* at 72 (citation omitted, emphasis added). Here, the Montana Legislature has defined accountability and direct deliberate homicide as discrete bases of liability. *See* Mont. Code Ann. § 45-5-102(1)(a) (deliberate homicide); Mont. Code Ann. §§ 45-2-301, -302 (accountability). Indeed, accountability concerns fundamentally different conduct than direct deliberate homicide. "Accountability . . . is a connection provided by our legislature that gives courts and juries a way to make people 'accountable' or responsible for a crime . . .[.]"

*State v. Gollehon*, 864 P.2d 249, 265 (Mont. 1993). In contrast to a direct deliberate homicide theory where the person causes the death of another, "[t]he law recognizes" under an accountability theory that "circumstances may exist in which persons other than those actually committing the offense should nonetheless be held criminally culpable." *State v. Kline*, 376 P.3d 132, 135 (Mont. 2016). Accordingly, under either test, Wood's arguments fail.

### F. The Montana Supreme Court did not create a new "elements plus collateral-estoppel" test when it cited *Sanabria*.

This Court should reject Wood's argument Montana Supreme Court divined an "elements plus collateral-estoppel" test by wrongly importing collateral estoppel principles into a double jeopardy analysis. (Doc 3.1 at 47.) The Montana Supreme Court simply applied the case Wood claimed was applicable—*Sanabria*—and determined the scope of the acquittal to the facts of which Wood was acquitted, just like the *Sanabria* Court did. 437 U.S. at 72-73. The *Sanabria* Court explained that both the "form" and "substance" of the acquittal should be examined, and an acquittal is a resolution of "some or all" of the factual elements charged. *Id.* at 66, 71. Central to *Sanabria*'s holding was the determination that Sanabria was found not guilty on a failure of proof on a key "factual element of the offense charged" that he was "connected with" the overall illegal gambling business. *Id*. at 71. The Supreme Court again later stated that petitioner was "acquitted for insufficient

proof of an element of the crime which both such [horse betting and numbers betting] counts would share—that he was 'connected with' the single gambling business[]" which "stands as an absolute bar to any further prosecution for participation in that business." *Id*. at 72-73. The Montana Supreme Court did not conduct a separate collateral estoppel analysis; it applied the double jeopardy clause as in *Sanabria*. And, in contrast to the petitioner's acquittal being connected to the overall illegal gambling business in *Sanabria*—the scope of the acquittal here for accountability had no bearing on the elements or culpability for direct deliberate homicide.

**G. As the district court noted, Wood has never relied upon an implied jury acquittal argument. Wood's repackaged argument based on her valued right to a particular tribunal fails.**

Wood does not, and has never, relied on any argument that she was implicitly acquitted via the jury's verdict at the trial level.[4] The federal district court acknowledged this fact, and further reasoned that any implicit argument would fail because Wood was convicted, not acquitted, at trial. *Order,* *21. Wood also acknowledges on appeal she "does not assert" she is relying on an implied acquittal argument. (Doc. 3.1 at 25.) Instead, Wood repackages it as an argument

[4] (See CR 1-22 at 12) (Wood's motion to dismiss reply brief stating the "implied acquittal doctrine under *Green* [v. *United States*, 355 U.S. 184, 186 (1957)] has nothing to do with" this circumstance); *see also* 4-ER-726-32 (supervisory control petition solely arguing an appellate acquittal occurred).

she has the "valued right to have [her] trial completed by a particular tribunal." (S*ee id*. at 25.) This argument fails.

An appellate partial acquittal after a jury conviction does not implicate a defendant's right to a valued tribunal. A defendant's valued right for a particular tribunal comes into play "[w]hen the jury is discharged before a determination on the merits[.]" *United States v. Sanders*, 591 F.2d 1293, 1296 (9th Cir. 1979) (citing *Arizona v. Washington*, 434 U.S. 503, 505 (1978); *United States v. Jorn*, 400 U.S. 470, 479-80 (1971)). "The reason for treating a trial aborted on the initiative of the trial judge differently from a trial verdict reversed on appeal, for purposes of double jeopardy" is "[in] the [second] situation the defendant has not been deprived of his option to go to the first jury, and, perhaps, end the dispute then and there with an acquittal." *United States v. Scott*, 437 U.S. 82, 99-100 (1978) (citing *Jorn*, 400 U.S. at 484). But "where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.'" *Id*. (citing *Jorn*, 400 U.S. at 484). Here, Wood has not been deprived of her valued right to have a trial by a particular tribunal. The trial was not aborted midtrial, and it concluded with a jury conviction.

But even if Wood's arguments showed that this right was somehow implicated, the double jeopardy clause "does not offer a guarantee to the defendant

that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982) (citing *Jorn*, 400 U.S. at 483-84; *Wade v. Hunter*, 336 U.S. 684, 689 (1949)). "What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Richardson*, 468 U.S. at 325 (citing *Wade*, 336 U.S. at 688-89). "If the law were otherwise, 'the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again.'" *Kennedy*, 456 U.S. at 672 (citing *Jorn*, 400 U.S. at 483-84; *Wade*, 336 U.S. at 689). Here, the Montana Supreme Court acknowledged and recounted the evidence against Wood for direct deliberate homicide when it reversed based on accountability in *Wood I*. The jury was further instructed it must agree on the same act or acts to convict Wood. The public has an interest in vindicating a just judgment in a retrial.

### H. Wood changed her legal theory between the direct appeal and the double jeopardy challenge. Regardless, *Tower* is inapplicable here.

Wood repeatedly accuses the State of changing its legal theory between the direct appeal and the double jeopardy proceedings. But it was Wood who immediately changed her legal theory. In the direct appeal, attempting to isolate

and distinguish the accountability error, Wood argued that the "personal wrongdoing and accountability . . . concepts are distinct" and that *Tower* was inapplicable for sufficiency of the evidence for accountability because *Tower* only concerned the sufficiency of the charging document. (SER-46-50.) But after Wood was granted relief and the Montana Supreme Court reversed her conviction for accountability, Wood completely switched positions in attempting to evade retrial for direct deliberate homicide. She argued "accountability and responsibility have been consistently treated as the same offense in Montana case law[]" and under "*Tower*" that "accountability is not a separate or different offense" from the underlying offense. (4-ER-863-64.) The district court substantively explained this history and noted that "Wood now takes the State's former position and argues that direct deliberate homicide and homicide by accountability are the same offense as determined by the Montana Supreme Court in *Tower* and its progeny." *Order*, *24. As the district court further explained, "[t]he Montana Supreme Court held that *Tower*" was of "no consequence" to Wood's situation. *Id*. *23 (citing *Wood I* at 958). And, as explained above, the district court ultimately found *Tower* not determinative to a double jeopardy analysis under *Blockburger*. *Id*. *22-25.

### I. Conducting a retrial based on alternative means not subject to an acquittal or terminating event does not frustrate the policy of double jeopardy.

The "protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson*, 468 U.S. at 325 (citations omitted). The "[i]nterests supporting the continuing jeopardy principle involve fairness to society, lack of finality, and limited waiver." *Justices of Boston Mun. Court*, 466 U.S. at 308. Because there was never any acquittal of direct deliberate homicide, jeopardy continues on that theory. *See, e.g., Fuller*, 367 P.3d at 1063 (while jeopardy terminated as to only one means of committing the offense, jeopardy never terminated as to the offense as a whole, and retrial on the alternative means did not violate double jeopardy.).

Adopting Wood's proposed interpretation would not serve the purpose of the double jeopardy clause. The "policy" behind the double jeopardy principles "protects the accused from attempts to relitigate the facts underlying a prior acquittal[,]" *Brown*, 432 U.S. at 165 (cleaned up); thus, the "Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks*, 437 U.S. at 11. Here, while double jeopardy bars the State from relitigating the facts underlying the prior acquittal for accountability which the State failed to

"muster" at the first trial, the policy would not be served by foreclosing the State from pursuing direct deliberate homicide at retrial—which was never even implicated by the acquittal here. Allowing retrial on the direct deliberate homicide will not only serve society's interest in ensuring the guilty are punished; it also protects Wood's right to a fair trial. *See Tateo*, 377 U.S. at 368-69. This Court should reject Wood's petition.

## CONCLUSION

The State of Montana respectfully requests that this Court affirm the order of the federal district court denying Wood's § 2241 petition.

Respectfully submitted this 24th day of September, 2026.

AUSTIN KNUDSEN
Montana Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401

By: *__/s/ Roy Brown__*
ROY BROWN
Assistant Attorney General

## STATEMENT OF RELATED CASES

Appellees are unaware of any related cases pending in the Ninth Circuit within the meaning of Ninth Circuit Rule 28-2.6.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the clerk of the Court of Appeals for the Ninth Circuit by using the Court's cm/ecf system.

Participants in the case who are not registered CM/ECF users will be served by U.S. Mail.

_1, 2____ CM/ECF
________ Hand Delivery
_______ Mail
________ Overnight Delivery Service
________ E-Mail

1. Clerk, Ninth Circuit Court of Appeals

2. Shandor Badaruddin, Attorney for Appellant Wood

Dated: September 24, 2026 *_/s/ Roy Brown_*
ROY BROWN

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(B), I certify that this principal brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 8,726 words, excluding certificate of service and certificate of compliance.

*/s/ Roy Brown*
ROY BROWN