No. 26-4519

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

STATE HABEAS COUNSEL, et. al,

Respondent/Appellee,

v.

DANIELLE JEANETTE WOOD,

Petitioner/Appellant.

On Appeal from the United States District Court
District of Montana, Missoula Division
The Honorable Brian M. Morris
Cause No. 9:25-cv-000201-BMM

# APPELLANT'S REPLY BRIEF

Shandor S. Badaruddin
SHANDOR S. BADARUDDIN, PC
736 South Third Street West
Missoula, Montana 59801
(406) 728-6868
shandor@shandorlaw.com
tricia@shandorlaw.com

*Attorney for Appellant Danielle Wood*

# TABLE OF CONTENTS


TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................ iii

I. INTRODUCTION ........................................................................ 1

II. ARGUMENT ........................................................................ 3

a. The Applicable Standard of Review is *De Novo,* and No Relevant Factual Finding made Below is at Issue in this Appeal. .......................... 3

b. Appellees Rely Upon a Basis the Double Jeopardy Clause Does Not Recognize: Jeopardy by Theory. .......................................................... 5

1. The Double Jeopardy Clause Protects Against Successive Prosecution for the "Same Offence" and Appellees Concede There is Only one Offense. .......................................................... 5

2. An Appellate Ruling the Proof is Insufficient to Establish Liability for the Offense. .............................................................. 7

3. Continuing Jeopardy Requires a Conviction that may be Reinstated or a Reversal for Trial Error and Neither is Presented in this Case. .............................................................. 8

4. The Montana Supreme Court did not "Expressly Determine" the Jury Convicted on Direct Liability." ..................................... 10

5. It is Immaterial Wood did not Independently Challenge the Sufficiency of the Evidence of Direct Liability on Appeal in *Wood I.* ........................................................................ 10

c. *Sanabria* Controls, and Appellees' Distinctions are Inapplicable and Insignificant. ........................................................................ 12

1. An Appellate Acquittal is Equivalent to a Trial Acquittal. .......... 12

2. *Sanabria* Bars Retrial Even if the Acquittal on Appeal was Theory Specific. .......... 13

3. *Sanabria* Rejected Appellees' "Discrete Bases of Liability" Argument. .......... 14

4. Appellees' "Shared Element" Reading of *Sanabria* is Precisely the Collateral Estoppel Test the *Dixon* Court Rejected. .......... 16

d. *Blockburger* Does Not Apply but if it Does, Wood Prevails and a Second Trial is Barred by the Double Jeopardy Clause. .......... 16

1. *Blockburger* Requires Two Offenses Defining Statutory Provisions. .......... 16

2. Violation of Montana's Deliberate Homicide Statute by Direct Liability Does Not Require any Fact that Violation by Accountability Does Not Require. .......... 18

3. Appellees and the District Court Below Rely Upon Two Mutually Exclusive Grounds. .......... 19

e. Appellees' Out of Circuit and State Court Authorities Do Not Support Retrial. .......... 20

f. The State Created the Ambiguity Upon Which its Argument Depends. .......... 23

g. Jeopardy Also Terminated When the Jury was Discharged Without Reaching a Verdict on the Direct Liability Theory. .......... 24

h. Wood Has Not Changed her Position, Appellees Have. .......... 25

i. Retrial Would Give the State a Second Opportunity to Supply the Proof it Failed to Muster at the First Trial. .......... 27

III. CONCLUSION .......... 28

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Roe*, 305 F.3d 1046(9th Cir. 2002) .......... 4

*Blockburger v. United States*, 284 U.S. 299 (1932) .......... 16-20, 26

*Brown v. Ohio,* 432 U.S. 161 (1977) .......... 14

*Braverman v. United States*, 317 U.S. 49 (1942) .......... 14

*Burks v. United States*, 437 U.S. 1 (1978) .......... 9, 12, 20, 27-28

*Commonwealth v. Zanetti*, 910 N.E.2d 869, 454 Mass. 449 (Mass. 2009) .......... 22

*Engle v. Isaac*, 456 U.S. 107 (1982) .......... 3, 4

*Evans v. Michigan*, 568 U.S. 313 (2013) .......... 7, 20

*Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008) .......... 4

*Green v. United States*, 355 U.S. 184 (1957) .......... 24

*Harrison v. Gillespie*, 640 F.3d 888 (9th Cir. 2011) .......... 4

*Hoyle v. Ada County*, 501 F.3d 1053 (9th Cir. 2007) .......... 4

*Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294 (1984) .......... 8, 9

*Missouri v. Hunter*, 459 U.S. 359 (1983) .......... 17

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .......... 26

*Oregon v. Kennedy*, 456 U.S. 667 (1982) .......... 24, 25

*Richardson v. United States*, 468 U.S. 317 (1984) .......... 8, 12, 20

*Sanabria v. United States*, 437 U.S. 54 (1978) .......... 1, 5, 7, 11-16, 20, 22, 28

*Smalis v. Pennsylvania*, 476 U.S. 140 (1986) .......................................................... 2

*Smith v. Massachusetts*, 543 U.S. 462 (2005) .................................. 2, 9, 12, 20, 28

*State v. Fuller*, 367 P.3d 1057, 185 Wn.2d 30 (Wash. 2016) .......................... 20, 22

*State v. Gollehon,* 864 P.2d 249 (1993) ............................................................. 15

*State v. Hatten,* 1999 MT 298, 297 Mont. 127, 991 P.2d 939 ............................... 15

*State v. Kline*, 2016 MT 177, 384 Mont. 157, 376 P.3d 132 (Mont. 2016) ..... 15, 26

*State v. Maetche*, 2008 MT 184, 343 Mont. 464, 185 P.3d 980 ............................ 25

*State v. Ramos,* 184 P.3d 1256 (2008) ................................................................ 20

*State v. Tower*, 881 P.2d 1317 (1994) ........................................................... 25, 26

*State v. Wood (Wood I),* 2024 MT 318 .........................................6, 8-13, 19, 25-27

*State v. Wright*, 203 P.3d 1027 (2009) ............................................................ 22-24

*Stow v. Murashige*, 389 F.3d 880 (9th Cir. 2004) ................................................ 3, 4

*Terry v. Potter*, 111 F.3d 454 (6th Cir. 1997) ........................................... 21, 23, 25

*United States v. Ball,* 163 U.S. 662 (1896) ............................................................ 8

*United States v. Dixon*, 509 U.S. 688 (1993) ..................................................... 2, 16

*United States v. Garcia*, 938 F.2d 12 (2nd Cir. 1991) ..................................... 21, 23

*United States v. Hickey*, 367 F.3d 888 (9th Cir. 2004) .......................................... 17

*United States v. Jose*, 425 F.3d 1237 (9th Cir. 2005) ............................................. 8

*United States v. Sanders*, 591 F.2d 1293 (9th Cir. 1979) ...................................... 24

*United States v. Scott*, 437 U.S. 82 (1978) .......................................................... 24

*United States v. Tateo,* 377 U.S. 463 (1964) .................................................. 27, 28

*Williams v. Warden*, 422 F.3d 1006 (9th Cir. 2005) ........................................ 22, 23

*Wilson v. Belleque*, 554 F.3d 816 (9th Cir. 2009) .................................... 3, 4, 17, 18

*Wood v. Mercer (Wood II),* 2025 MT 163 .............................................. 6, 8, 13, 16

**Statutes**

45-2-301, MCA ..................................................................................... 8, 14, 18, 25

45-2-302, MCA ............................................................................................................ 17

45-5-102, MCA ...................................................................................................... 1, 6, 17

28 U.S.C. § 2241 ............................................................................................... 3, 4, 28

28 U.S.C. § 2254 ..................................................................................................... 3, 4

**Other Authorities**

Fifth Amendment, United States Constitution .................................................... 1, 2

## I. Introduction.

Appellees concede almost every element upon which the ultimate decision in this appeal will be based. They concede jeopardy attached. They concede the Montana Supreme Court "acquitted Appellant on accountability for deliberate homicide." Appellees' Brief, ECF Dkt. 6.1, page 29 ("…the acquittal bars retrial on that theory of culpability."). Appellees admit, or at least, they do not dispute, Wood was charged in a single count with a single offense (deliberate homicide under Section 45-5-102(1)(a), MCA), that the jury returned a single verdict on that single count, or that the State intends to retry her on the same Amended Information, which still alleges an accountability theory. *See* 5-ER-1036; 4-ER-844:1-3; 1-ER-35 n.4.

Appellees fail to identify the "offence" that now remains unadjudicated. The Double Jeopardy Clause protects against being twice put in jeopardy "for the same offence." U.S. Const. Amend. V. It does not reference theories, means, or bases of liability. Appellees' argument, that jeopardy "terminated" on one theory but "continues" on another, depends on dividing a single offense into pieces the Double Jeopardy Clause does not recognize. *Sanabria v. United States*, 437 U.S. 54 (1978) forbids the precise division argued by Appellees, and Appellees' efforts to confine *Sanabria* to its facts ignore the portion of the opinion which controls the decision in this case.

Appellees' brief also leaves unaddressed one of the principal points of Appellant's opening brief: there is no verdict to reinstate, *See Smith v. Massachusetts*, 543 U.S. 462, 467 (2005).[1] *United States v. Dixon*, 509 U.S. 688 (1993) forbids giving "same offence" one meaning for purposes of preserving jeopardy and another for defeating it. The State of Montana prosecutor (correctly) told the Montana trial court accountability is "part and parcel of the one charge of "deliberate homicide", (*See* 5-ER-995:11-14, 5-ER-996:22-25), and told a Montana trial court on remand Appellant Wood "remains charged with the same offense" and "[m]oreover, the Montana Supreme Court has already confirmed that the offense of accountability for deliberate homicide is not a 'separate and distinct offense apart from deliberate homicide.'" 2-ER-257. The U.S. district court below relied on two mutually exclusive grounds for decision which cannot both be correct, (*See* Appellant Brief, ECF 3.1, pages 43, 52-53), yet Appellees adopt both. (*See* Appellees' brief, ECF Dkt. 6.1, pages 32-35, 37-40).

[1] *Smith* held, *inter alia*, "…we have long held that the Double Jeopardy Clause of the Fifth Amendment prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict. [citations omitted]…if the prosecution has not obtained not yet obtained a conviction, further proceedings to secure one are impermissible: 'Subjecting the defendant to post acquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause'. *Smalis v. Pennsylvania*, 476 U.S. 140, 145, 90 L.Ed.2d 116, 106 S.Ct. 1745 (1986)."

## II. Argument.

### a. The Applicable Standard of Review is *De Novo*, and No Relevant Factual Finding Made Below is at Issue in this Appeal.

In a §2241 case, there are many potential standards of review and there is a potential that findings of the predecessor courts may be entitled to some degree of deference by this court. While this is true in many cases, the case at bar, presents no such issue. Because there is no factual finding which is contested by a party, this Court need not determine what, if any, deference to accord those findings. All parties agree on each relevant finding of fact, and none are contested. The standard or review for the matter presented by this appeal is *de novo*.

Appellees agree AEDPA deference under 28 U.S.C. 2254(d) does not apply, (Appellees' Brief, ECF Dkt. 6.1, page 24), but recite a "presumption of correctness" for factual findings and places the "burden" on Wood under *Engle v. Isaac*, 456 U.S. 107 (1982). Appellees' Brief, ECF 6.1, pages 24-25.

In *Wilson v. Belleque,* 554 F.3d 816, 828 (9th Cir. 2009) this Court held:

> A petition filed pursuant to § 2241 is not reviewed under the deferential standards imposed by AEDPA. *[Stow v.]Murashige,* 389 F.3d [880] at 888 [9th Cir. 2004)]. Accordingly, we must grant Wilson habeas relief if we conclude on *de novo* review that retrying him on felony murder charges would violate the Double Jeopardy Clause. We need not further consider, as we would for a petition filed pursuant to 28 U.S.C. § 2254, whether the decisions of the Oregon courts permitting retrial were "contrary to" or an "unreasonable application of" clearly established federal law as determined by the Supreme Court.

Appellant disputes no factual findings. The record of what was charged, argued, requested, refused, and decided is documentary, easily referenced, and not in dispute. Whether retrial would violate the Double Jeopardy Clause is a question of law this Court decides "on *de novo* review." *Belleque*, 554 F.3d at 828. *Engle*, a §2254 procedural-default decision, does not alter that standard. While Appellant is in custody for the purposes of §2241, that custody does not arise by virtue of any state court judgment, which would trigger the application of 28 U.S.C. § 2254. "Thus, to obtain habeas relief, [Appellant] need only show that a retrial would violate [her] right against double jeopardy." *Murashige,* 389 F.3d at 882. Because Appellant brought her petition below pursuant to §2241, the deferential provisions of §2254 do not apply, and this Court's review of Appellant's federal constitutional claims are *de novo*. *See Harrison v. Gillespie,* 640 F.3d 888, 896-897 (9th Cir. 2011) (*en banc*); *See Also Frantz v. Hazey*, 533 F.3d 724, 732–737 (9th Cir. 2008)(*en banc*)(clarifying once §2254 ceases to apply, review of a state defendant's habeas claim is *de novo* under §2241). Because AEDPA does not apply to petitions under 28 U.S.C. § 2241, pre-AEDPA standards govern this Court's review: determinations of law are reviewed *de novo. See Hoyle v. Ada County*, 501 F.3d 1053, 1059 (9th Cir. 2007), *citing Allen v. Roe*, 305 F.3d 1046, 1050 (9th Cir. 2002) and *Murashige*, 389 F.3d at 888.

The standard of review is *de novo*.

**b. Appellees Rely Upon a Basis the Double Jeopardy Clause Does Not Recognize: Jeopardy by Theory.**

Appellees employ the terms "offense," "theory," "mean," "charge," and "statute" interchangeably. They describe accountability as an "alternative charge," (Appellees' Brief, ECF Dkt. 6.1, page 25), an "alternative mean[]," *Id.* at 32, a "discrete bas[is] of liability," *Id.* at 39, and a "statute[]" that does "not concern the same offense" as deliberate homicide, *Id.* at 38. These distinctions, if valid, are not distinctions recognized by the Double Jeopardy Clause.

**1. The Double Jeopardy Clause Protects Against Successive Prosecution for the "Same Offence" and Appellees Concede There is Only one Offense.**

The Double Jeopardy Clause does not permit the flexibility required by Appellees. The question is whether the second prosecution is for the "same offence," and "[i]t is Congress, and not the prosecution, which establishes and defines offenses." *Sanabria*, 437 U.S. at 69. "Once [the legislature] has defined a statutory offense by its prescription of the 'allowable unit of prosecution,' that prescription determines the scope of protection afforded by a prior conviction or acquittal." *Id.* at 69-70 (citations omitted).

The Montana Supreme Court answered the unit-of-prosecution question, and the State of Montana has repeatedly agreed with the answer. Accountability "is

neither a technically separate and distinct 'offense' apart from direct deliberate homicide as defined by Section 45-5-102(1)(a), MCA, nor does it require proof of who actually 'struck' the literal or figurative 'fatal blow.'" *Wood I*, 1-ER-68, ¶40; *accord Wood II*, 1-ER-36, ¶17. The Montana trial prosecutor told the trial court "…accountability is part and parcel of the charge of deliberate homicide," 5-ER-995:11-13, and "…part and parcel of deliberate homicide of the actual crime that's charged." 5-ER-996:23-25. The trial prosecutor told the jury: "We have one charge, deliberate homicide." 5-ER-1005:13-14. On appeal in *Wood I*, the State argued "[c]riminal accountability is not considered a substantive separate offense, but merely a conduit by which to find a person criminally liable for the acts of another." 4-ER-906. On remand, it argued Wood "remains charged with the same offense" and "the offense of accountability for deliberate homicide is not a 'separate and distinct offense apart from deliberate homicide.'" 2-ER-257. At the hearing on Wood's motion to dismiss, the prosecutor argued retrial would not place Wood "in jeopardy twice for the same offense" because "she's put back in the position of a retrial for the same jeopardy that she was in before." 4-ER-844:14-17.

Appellees cannot identify a second offense, because there is no separate offense. Wood could be convicted of only one crime, deliberate homicide, punishable only under Section 45-5-102(2), MCA. The jury was given one choice on one solitary count. 4-ER-956; 1-ER-58-59, ¶29. Upon conviction, Wood received

one, and only one, sentence for one crime. 1-ER-60, ¶31. If Appellant was charged with only one offense, (and she was only charged with one solitary offense), for which she received only one sentence, the acquittal she obtained must be for that single offense.

### 2. An Appellate Ruling the Proof is Insufficient to Establish Liability for the Offense.

Appellees agree an acquittal includes "…any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense," *Evans v. Michigan*, 568 U.S. 313, 318 (2013), and that an acquittal is "a resolution … of some or all of the factual elements of the offense charged." Appellees' Brief, ECF Dkt. 6.1, page 29, *quoting Sanabria*, 437 U.S. at 71. Appellees read the word "some" as licensing a partial acquittal that leaves the remainder of the offense open for retrial. The Supreme Court employs the phrase with the opposite meaning: to define how little is required for an acquittal of the offense to occur. In *Evans*, the trial court resolved an "element" that was not an element of the offense at all, and the ruling was nevertheless an acquittal that barred retrial for the offense. *Evans*, 568 U.S. at 320.[2] A resolution of "some" of the elements is an acquittal, it is not a fraction of an acquittal.

[2] *Evans* held "[t]here is no question the trial court's ruling was wrong; it was predicated upon a clear misunderstanding of what facts the State needed to prove under state law. But that is of no moment…" *Evans,* 568 U.S. at 320.

The Montana Supreme Court held *Wood I*'s reversal "amounted to a ruling that the State's proof was insufficient to establish criminal liability for deliberate homicide by accountability." *Wood II,* 1-ER-34, ¶14. Appellees do not challenge this holding, nor does it offer some alternative interpretation. The "offense" for which the State's proof was insufficient to establish criminal liability was deliberate homicide. "Deliberate homicide by accountability" is not a crime Montana Law defines, penalizes, or on which it permits a jury to return as a separate verdict. Deliberate homicide is the crime and it may be proven by any of the routes identified by Section 45-2-301, MCA.

**3. Continuing Jeopardy Requires a Conviction that may be Reinstated or a Reversal for Trial Error and Neither is Presented in this Case.**

Appellees argue "continuing jeopardy" and rely upon cases in which the continuing jeopardy arose from trial-error and/or mistrial cases. Appellees' Brief, ECF Dkt. 6.1, pages 28-29, 43, 45, citing *United States v. Ball*, 163 U.S. 662 (1896), *United States v. Jose*, 425 F.3d 1237 (9th Cir. 2005), *Richardson v. United States*, 468 U.S. 317, 325-26 (1984) and *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294 (1984). *Ball* and *Jose* involved retrial after reversal of a conviction on grounds other than insufficiency. *Ball*, 163 U.S. at 665; *Jose*, 425 F.3d at 1240. *Richardson* involved a hung jury. *Richardson*, 468 U.S. 317 at 325-326. *Lydon* involved

Massachusetts' two-tier trial system. *Lydon*, 466 U.S. at 297-298. None of these cases involved the issue presented by this case, an appellate determination that the evidence was insufficient, or an acquittal on appeal (or an acquittal of any sort).

*Burks v. United States*, 437 U.S. 1 (1978), eliminated consideration of insufficiency of the evidence from the continuing-jeopardy rule. "[T]he Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient…" *Id.* at 18. Appellees sought to avoid the clear rule of *Burks* in the Montana Supreme Court by characterizing *Wood I* as a trial-error reversal but the Montana Supreme Court rejected that characterization. 1-ER-33-34, ¶¶13-14.[3] Appellees do not argue otherwise in this Court. Having conceded an appellate acquittal, Appellees are left with the one exception *Smith* recognizes, an appeal to reinstate a jury's guilty verdict. *See Smith*, 543 U.S. at 467. That exception is unavailable. *Wood I* held it could not "confidently" say the jury convicted Wood of personally causing LaFreniere's death, 1-ER-77, ¶51, and reversed the verdict. There is no verdict to reinstate. Where, as here, "…the prosecution has not yet obtained a conviction, further proceedings to secure one are impermissible." *Smith*, 543 U.S. at 467.

[3] The Montana Supreme Court held "…we determined [in *Wood I*] the accountability instruction was *unsupported* by the evidence…Our reversal of Wood's first conviction amounted to a ruling that the State's proof was insufficient to establish criminal liability for deliberate homicide by accountability. *See Burks,* 437 U.S. at 16…" (emphasis in the original).

#### 4. The Montana Supreme Court did not "Expressly Determine" the Jury Convicted on Direct Liability.

Appellees, like the U.S. district court below, assert "…[t]he Montana Supreme Court expressly determined the jury may have, unanimously found Wood guilty of direct deliberate homicide." Appellees' Brief, ECF Dkt. 6.1, page 29. The Montana Supreme Court said no such thing. In *Wood I,* the Montana Supreme Court held it was "…likely but not certain…the jury unanimously found Wood guilty of direct deliberate homicide[,]" 1-ER-76, ¶50, and further held, "[u]nder the particular circumstances at issue here, we cannot confidently make such a finding." 1-ER-77, ¶51. A verdict the reviewing court could not attribute to either theory cannot be the foundation for "continuing" jeopardy on one of them. Furthermore, the uncertainty exists because the State defeated each of Wood's efforts to eliminate it. *See* Part e, *infra*. Appellees should not be able to exploit the uncertainty they are responsible for creating to their advantage and to Wood's detriment.

#### 5. It is Immaterial Wood did not Independently Challenge the Sufficiency of the Evidence of Direct Liability on Appeal in *Wood I*.

Appellees repeatedly note Wood did not argue on direct appeal in *Wood I* that the evidence of direct liability was insufficient. Appellees' Brief, ECF Dkt. 6.1, page

11 note 2, and 31-32. This is not an accurate characterization of the record, and it is irrelevant as a matter of law to the issue presented by this Appeal.

The Montana Supreme Court held, in *Wood I*, "…[Wood] moved…for dismissal of both of the State's asserted theories of deliberate homicide on the asserted ground, inter alia, that the state had presented insufficient evidence to prove his [sic] guilt under either theory [note 12]." 1-ER-55-56, ¶26. The trial record at 5-ER-993:10-994:17 confirms Wood made such a motion. Appellees' characterization of that motion as one only directed to "…the accountability charge,…" (*See* Appellees' Brief, ECF Dkt. 6.1, page 10), is incorrect. The trial court denied the motion. 5-ER-997:22-999:10. On first appeal, Wood argued it was "…nearly impossible for Danielle to have shot and killed Matthew as the State claimed…" SER-46, and the "…[State] threw in accountability to ensure a conviction even if the jury had reasonable doubt." SER-51.

More importantly, the scope of an acquittal is fixed by the offense, not by the scope of the defendant's appellate argument. In *Sanabria*, the acquittal rested entirely on the insufficiency of the evidence of horse betting, and the numbers theory was never found insufficient, but rather, it was excluded on a legal ruling the Supreme Court assumed was erroneous. *Sanabria* 437 U.S. at 58-59, 68-69. Retrial on the numbers theory was nevertheless barred, because it was the same offense. *Id.* at 69-70, 73-74. And a defendant who seeks a new trial on appeal does not thereby

waive the protection of an insufficiency ruling: "it makes no difference that a defendant has sought a new trial as one of his remedies, or even as the sole remedy." *Burks*, 437 U.S. at 17.

**c. *Sanabria* Controls, and Appellees' Distinctions are Inapplicable and Insignificant.**

Appellees argue two distinctions of *Sanabria*: (1) the *Sanabria* acquittal was entered at trial rather than on appeal, and (2) the *Sanabria* acquittal was entered on the whole count "…without specifying that it did so only with respect to one theory of liability." Appellees' Brief, ECF Dkt. 6.1, pages 30-32, citing *Sanabria*. Neither distinction survives the *Sanabria* opinion.

**1. An Appellate Acquittal is Equivalent to a Trial Acquittal.**

*Burks* holds an appellate finding of insufficiency of the evidence is, for double jeopardy purposes, the equivalent of an acquittal. *Burks,* 437 U.S. at 16-18; *See also, Richardson*, 468 U.S. at 325. *Smith* holds the Double Jeopardy Clause "prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict." *Smith,* 543 U.S. at 467. Appellees' themselves properly characterize *Wood I* as an acquittal. Appellees' Brief, ECF Dkt. 6.1, page 8. The fact Wood's acquittal came from the Montana Supreme Court rather than the trial judge or jury is a distinction without any constitutional significance.

### 2. *Sanabria* Bars Retrial Even if the Acquittal on Appeal was Theory Specific.

Appellees, the Montana Supreme Court and the U.S. district court below, all rely on *Sanabria*'s observation that the judgment of acquittal was entered on the entire count. Appellees' Brief, ECF Dkt. 6.1, page 31; 1-ER-35-36, ¶16 (*Wood II*); 1-ER-20 (district court). *Sanabria* did not rest its opinion on this observation. The Supreme Court went on to assume the government was right, the trial court had merely "dismissed" the numbers theory, leaving it separately open, and held retrial barred anyway: "Even if the Government were correct that the District Court 'dismissed' the numbers allegation, in our view a retrial on that theory would subject petitioner to a second trial on the 'same offense' of which he has been acquitted." 437 U.S. at 69. Wood made this point in her opening brief. Appellant Brief, ECF Dkt. 3.1, page 41. Appellees do not respond to it.

Appellees seek to confine *Sanabria* to its facts while leaving its operative holding with no significance. This is the opposite of how appellate decisions should be interpreted. Even if Appellees are correct, and *Wood I* was an acquittal only "with respect to one theory of liability," *Sanabria* held that a retrial on the other theory is still a second trial for the same offense. *See Sanabria*, 437 U.S. at 73.

### 3. *Sanabria* Rejected Appellees' "Discrete Bases of Liability" Argument.

Appellees argue "…the Montana Legislature has defined accountability and direct deliberate homicide as discrete bases of liability." Appellees' Brief, ECF Dkt. 6.1, page 39. "Discrete bases of liability" is the phrase the court of appeals and the government used in *Sanabria* to justify retrial on the numbers theory. *Sanabria,* 437 U.S. at 61, 69-70. *Sanabria* held "'[t]he Double Jeopardy Clause is not such a fragile guarantee that … its limitations [can be avoided] by the simple expedient of dividing a single crime into a series of temporal or spatial units,' *Brown v. Ohio,* 432 U.S. [161 (1977)] at 169, or, as we hold today, into 'discrete bases of liability' not defined as such by the legislature. *See Id.* at 169, n. 8." *Sanabria,* 437 U.S. at 72.

The Supreme Court rejected any claimed significance of the nomenclature, analogizing to *Braverman v. United States*, 317 U.S. 49 (1942): "The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." *Sanabria*, 437 U.S. at 74, *quoting Braverman*, 317 U.S. at 53. In Wood's case, one death of one person caused by one act cannot be interpreted to result in two homicides because Section 45-2-301, MCA, supplies two routes to arrive at liability for the single homicide and single offense. "The Government having charged only a single gambling business, the discrete violations of state law which that business may have committed are not

severable in order to avoid the Double Jeopardy Clause's bar on retrials for the 'same offense.'" *Sanabria*, 437 U.S. at 73. Similarly, the State of Montana, having charged only a single homicide, may not sever the routes by which it sought to prove Wood liable for it in order to avoid the Double Jeopardy Clause's bar on retrials for the same offense.

The authorities relied upon by Appellees confirm this principle. *State v. Gollehon*, 262 Mont. 1, 44, 864 P.2d 249, 265 (Mont. 1993), describes accountability as "…a connection provided by our legislature that gives courts and juries a way to make people 'accountable' or responsible for a crime." Appellees' Brief, ECF Dkt. 6.1, pages 39-40. *State v. Kline*, 2016 MT 177, ¶¶13-14, 384 Mont. 157, 376 P.3d 132 (Mont. 2016), describes it as a means to hold persons culpable for "the offense." Appellees' Brief, ECF Dkt. 6.1, page 40. "Thus, we have explained, "accountability is not a separate offense from the crime for which the actor assumes accountability but 'is merely a conduit by which one is held criminally accountable for the acts of another.'" *B.W.,* ¶19, (*quoting State v. Hatten,* 1999 MT 298, ¶50, 297 Mont. 127, 991 P.2d 939). *Kline,* at ¶13. A "connection" to a crime and a "way" to hold someone responsible for it are rules of liability, and not the definition of a crime or offense itself.

#### 4. Appellees' "Shared Element" Reading of *Sanabria* is Precisely the Collateral Estoppel Test the *Dixon* Court Rejected.

Appellees defend *Wood II*'s reasoning by pointing to *Sanabria*'s observation that the acquittal there rested on an element shared by both theories. Appellees' Brief, ECF Dkt. 6.1, pages 40-41. That observation appears in the Court's response to the government's hypothetical about what would have happened had separate counts been charged. *Sanabria*, 437 U.S. at 72-73. This observation was not the basis of the holding. The basis of the *Sanabria* holding was the legislature's definition of the offense. *Id.* at 69-70. Converting the observation into the precondition argued by Appellees, that there is no bar to reprosecution unless the defendant shows the acquittal resolved a shared element, makes the "same offence" inquiry turn upon issue preclusion. *Dixon* rejects precisely that conflation of the same-elements test with collateral estoppel. *Dixon*, 509 U.S. at 705-06. *See Also,* Appellant Brief, ECF Dkt. 3.1, pages 56-57.

### d. *Blockburger* Does Not Apply, but if it Does, Wood Prevails and a Second Trial is Barred by the Double Jeopardy Clause.

#### 1. Blockburger Requires Two Offenses Defining Statutory Provisions.

Appellees argue *Blockburger* applies "…whether the provisions are in the same statute or different statutes…" Appellees' Brief, ECF Dkt. 6.1, page 37, citing

*Missouri v. Hunter*, 459 U.S. 359 (1983) and *United States v. Hickey*, 367 F.3d 888, 891-92 (9th Cir. 2004)). The location of the provisions is not the problem. The problem is *Blockburger* compares two statutory provisions, each of which defines an offense. *Blockburger*, 284 U.S. 299, 304 (1932). *Hunter* compared Missouri's robbery statute with its armed-criminal-action statute, wherein each statute provided a penalty for its respective crime. *Hunter*, 459 U.S. at 361-362. *Hickey* likewise compared two federal offenses defined by separate statutory provisions. *Hickey,* 367 F.3d at 892.

Section 45-2-302(3), MCA, defines no crime and prescribes no penalty. No one has ever been convicted of "violating" it. It operates only by attaching to an offense defined elsewhere in the Montana Code, in this case, Section 45-5-102(1)(a). Appellees' assertion "…the two statutes do not concern the same offense…[,]" Appellees' Brief, (ECF Dkt. 6.1, page 38), begs the question: What is the second offense? The answer is simple: there is no second or separate offense. The State of Montana could not have obtained two convictions, or two sentences, for the sole offense of Deliberate Homicide with which Wood was charged. It cannot now claim the sole offense with which Wood was charged (Deliberate Homicide) is somehow now two offenses.

*Wilson v. Belleque*, on which the Appellees rely, illustrates the distinction. Appellees' Brief, ECF Dkt. 6.1, pages 38-39. In *Belleque*, intentional murder and

felony murder were defined by separate subsections of Oregon's murder statute, ORS 163.115(1)(a) and (1)(b), were charged in separate counts, and were each offense-defining statutory provisions. *Belleque*, 554 F.3d at 819 and 829-830. The retrial in *Belleque* followed a hung jury, not an appellate acquittal. *Id.* at 819-820 and 829. Appellees mention in a parenthetical, "…felony murder only details assistance to another person," Appellees' Brief, ECF Dkt. 6.1, pages 38-39. This assertion mischaracterizes the *Belleque* opinion. *Belleque* held Oregon's felony-murder statute does not require the defendant personally to have killed the victim when the underlying felony was committed with another. *Belleque,* 554 F.3d at 829. *Belleque* did not suggest that a rule of accomplice liability is itself a separate offense or a separate offense for analysis under the *Blockburger* rule.

**2. Violation of Montana's Deliberate Homicide Statute by Direct Liability Does Not Require any Fact that Violation by Accountability Does Not Require.**

Appellees repeat the district court's premise, "[d]eliberate homicide requires a direct causation element" absent from accountability. Appellees' Brief, ECF Dkt. 6.1, pages 23, 26, and 38; 1-ER-26. This premise is wrong because accountability requires proof "a deliberate homicide occurred," without regard to who caused the death, and Section 45-2-301, MCA, makes a person responsible for conduct that is her own, another's for which she is accountable, "or both." 1-ER-68-69, ¶40; *See*

*Also,* Appellant Brief, ECF Dkt. 3.1, pages 45-48. Appellees do not respond to this fact, nor do they reconcile their present position with their argument in *Wood I* that accountability applied "even if [Wood] did not pull the trigger" and "[t]heories of principal liability and accountability are not mutually exclusive." 4-ER-908-10. If a person who personally fired the shot may be convicted on an accountability theory, as the State argued in *Wood I*, and as Montana law permits, 1-ER-66-68, ¶¶38-40, direct liability requires no fact accountability does not, and the two theories, or offenses, are the same under *Blockburger*.

#### 3. Appellees and the District Court Below Rely Upon Two Mutually Exclusive Grounds.

Appellees first argue retrial is permissible because accountability and direct liability are "alternative means" of committing "a single crime." Appellees' Brief, ECF Dkt. 6.1, pages 26, 32-35. Secondly, Appellees argue the theories of direct and accountability liability are different offenses under *Blockburger*. Appellees' Brief, ECF Dkt. 6.1, pages 37-40. Appellant addresses this mutual exclusivity with one another in her opening brief. Appellant Brief, ECF Dkt. 3.1, pages 52-53. Appellees do not attempt to reconcile the mutual exclusivity. If they are alternative means of one crime, they are the same offense, and Wood was acquitted of that single offense. If they are distinct offenses, the alternative-means cases are inapposite by their own

terms and *Blockburger* prohibits retrial. Either way, the judgment below cannot stand on the reasoning Appellees assert.

**e. Appellees' Out of Circuit and State Court Authorities Do Not Support Retrial.**

Appellees cite no decision of the Supreme Court or this Court permitting retrial after an appellate acquittal on one theory of a single-count offense. It relies instead on allegedly persuasive authorities from Washington, Massachusetts, the Second Circuit, and the Sixth Circuit. Each is distinguishable, and several support Wood's position, rather than Appellees' position.

*State v. Ramos*, 184 P.3d 1256, 163 Wn.2d 654 (Wash. 2008), adopted the alternative-means principle without citing *Sanabria* and over a dissent. It is a state court's construction of a federal constitutional guarantee, entitled to no deference in this *de novo* proceeding. 1-ER-16. In addition, *Ramos* cannot be reconciled with several Supreme Court cases including, but not limited to, *Sanabria, Burks, Smith, Evans* and others listed in Appellant's primary brief.

*State v. Fuller*, 367 P.3d 1057, 185 Wn.2d 30 (Wash. 2016), involved separately charged counts on which the jury acquitted on one and deadlocked on the other. *Id.* at ¶4. A hung jury is the paradigm of continuing jeopardy. *See Richardson*, 468 U.S. at 325-26. *Fuller* distinguished *Sanabria* on the ground that "in Fuller's case there is no new prosecution." *Fuller* at ¶18. In *Fuller,* unlike the case at bar,

there was no conviction, no appellate reversal, and no insufficiency ruling. This case presents all of those circumstances as well as a threatened new trial after an appellate acquittal.

*United States v. Garcia*, 938 F.2d 12 (2d Cir. 1991), rests expressly on the defendants' failure to request special interrogatories: "the Garcias cannot now complain of an ambiguity that they had the opportunity to clarify." *Id.* at 16. Wood did request the clarity the *Garcia* defendants did not, and did so not once, but three times, (1) dismissal of the alternative theory of guilt for which the evidence was insufficient; (2) a specific unanimity instruction; and (3) a special verdict form specifying the theory on which the jury's verdict was based, and the State defeated each request. *See* Appellant Brief ECF Dkt. 31, pages 58-62, 1-ER-55-56, ¶26; 5-ER-990-1009, 1-ER-38, ¶21. Moreover, Appellees now seek to exploit the ambiguity it successfully created over Wood's efforts and objections.

*Terry v. Potter*, 111 F.3d 454 (6th Cir. 1997), granted the requested writ and barred the threatened retrial. Appellees quote its statement that the reversal of a conviction on one of two legal theories "...may not bar retrial under the other theory." Appellees' Brief, ECF Dkt. 6.1, page 34, quoting *Terry*, 111 F.3d at 459. The sentence is permissive dictum, drawn from *Garcia*, in an opinion that held retrial barred because "[n]either the defendant here nor his counsel can be charged with having brought on the dilemma faced by the Kentucky court." *Terry*, 111 F.3d at 459.

The same is true of Wood, neither Wood, nor her counsel, can be charged with having brought on the dilemma faced by the Montana court. As noted above, and in more detail below, it is the State of Montana which must be charged with having brought the dilemma faced by this Court and its predecessors. *See* Section II(f).

*Commonwealth v. Zanetti*, 910 N.E.2d 869, 454 Mass. 449 (Mass. 2009), involved a special verdict "slip" with separate boxes for principal and joint-venture liability, on which the jury checked only joint venture. *Id.* at 878-79, 460. The question the Supreme Judicial Court of Massachusetts addressed was whether to infer an acquittal on principal liability from silence on the slip. *Id.* The Commonwealth in *Zanetti* gave the defendant precisely the verdict form Wood requested at her trial and to which the State of Montana successfully objected and refused Wood. *Zanetti* shows what a record looks like when the prosecution permits the jury to specify its theory, but it does not support a prosecution that prevented it.

Finally, Appellees attack *State v. Wright*, 203 P.3d 1027, 165 Wn.2d 783 (Wash. 2009)(*en banc*), as an "overstatement" later disapproved by *Fuller*. Appellees' Brief, ECF Dkt. 6.1, pages 36-37. Wood's argument does not depend on *Wright*, it depends on *Sanabria*. Appellees' treatment of *Williams v. Warden*, 422 F.3d 1006 (9th Cir. 2005) misses its significance. Appellees' Brief, ECF Dkt. 6.1, pages 35-36. Wood does not rely on *Williams* for an implied acquittal. Wood relies on *Williams* for this Court's explanation of why simultaneous verdicts on alternative

theories raise no double jeopardy problem: "The government litigated the case once, not twice, under alternative theories, as is its right." *Id.* at 1011. Unlike *Williams*, Appellees argue the State may litigate the same offense, not once, but twice, which is not its right and which violates the Double Jeopardy Clause.

**f. The State Created the Ambiguity Upon Which its Argument Depends.**

Appellees do not dispute, Wood sought: (1) dismissal of the unsupported theory, 5-ER-993:10-994:17; (2) a specific unanimity instruction, 5-ER-1002:2-8; 1-ER-57-58, ¶28; and (3) a verdict form requiring the jury to identify each theory upon which it was returning a verdict, 5-ER-1003:14-1004:5; 1-ER-58-59, ¶29. Appellees also do not dispute the State, successfully, opposed each effort by Wood to avoid the ambiguity now exploited by Appellees. The prosecutor acknowledged during the instruction conference, "accountability's been weak," 5-ER-1001:13-18, but nevertheless argued to the jury, in an effort to avoid Wood's right to unanimity, it could convict on that theory. 5-ER-1005:13-1006:9; 1-ER-77, ¶50. The State presented no evidence that anyone other than Wood was involved, and disclaimed the only alternative suspect. 5-ER-1008:1-8; 1-ER-71-72, ¶43.

Appellees' entire "continuing jeopardy" theory depends on the proposition that the jury *may have* relied on direct liability. That proposition is uncertain only because the State engineered the uncertainty. *Garcia* and *Terry* both treat the question of who brought about the ambiguity as significant. *Garcia,* 938 F.2d at 16;

*Terry,* 111 F.3d at 459. So does *Wright,* which held, "[w]hen the circumstances suggest the prosecution's action was motivated by a concern it could not prove its case, retrial is impermissible," and that "when there is no indication of bad faith and no likelihood of prosecutorial manipulation, double jeopardy principles are not necessarily offended." *Wright* at ¶42-43. Prosecutorial manipulation, motivated by a concern the State could not prove its case is exactly what occurred in Wood's trial. Appellees may not receive the benefit of an ambiguity it created over Wood's efforts and objections.

**g. Jeopardy Also Terminated When the Jury was Discharged Without Reaching a Verdict on the Direct Liability Theory.**

Appellees characterize Section VI(d)(4) of Appellant's opening brief, ECF Dkt. 3.1, as a "repackaged" implied-acquittal argument. Appellees' Brief, ECF Dkt. 6.1, pages 41-42. It is not. Wood has consistently disclaimed an implied acquittal, (Appellant Brief, ECF Dkt. 3.1, page 34), and continues to do so. The argument rests on the distinct principle in *Green v. United States*, 355 U.S. 184, 190-91 (1957): that jeopardy terminates when a jury is discharged, without the defendant's consent, without returning an express verdict on a charge it had a full opportunity to decide. Wood raised the argument below. 2-ER-102-04; 2-ER-122-24.

Appellees' responsive authorities concern mistrials declared before verdict. Appellees' Brief, ECF Dkt. 6.1, pages 42-43, citing *United States v. Scott*, 437 U.S.

82 (1978), *United States v. Sanders*, 591 F.2d 1293 (9th Cir. 1979), and *Oregon v. Kennedy*, 456 U.S. 667 (1982). Those cases address when manifest necessity or a defendant's own motion permits retrial after an aborted trial. This appeal presents no such case. Wood attempted to give the jury every opportunity to state whether it found her personally responsible, or directly liable, for the crime of deliberate homicide, but was prevented from doing so, not by necessity, but by the State's opposition to the verdict form Wood proposed, 1-ER-58-59, ¶29, as well as the Motion to Dismiss the alternative accountability theory, and jury instructions that would have properly explained when and how to return a verdict of guilty. *Terry* recognized such circumstance as "a termination of the jeopardy … without a conviction or an acquittal, but a termination nonetheless." *Terry,* 111 F.3d at 458.

**h. Wood Has Not Changed her Position, Appellees Have.**

Appellees accuse Wood of "switch[ing] positions" because she argued on direct appeal that personal wrongdoing and accountability are "distinct" theories, and *State v. Tower*, 881 P.2d 1317, 267 Mont. 63 (Mont. 1994), does not govern sufficiency of the evidence. Appellees Brief, ECF Dkt. 6., pages 43-44, citing SER-46-50. The record does not support the accusation.

On direct appeal in *Wood I*, Wood described accountability exactly as she does now: "a 'conduit by which to find a person criminally liable for the acts of another.'" SER-45, *quoting State v. Maetche*, 2008 MT 184, ¶16, 343 Mont. 464, 185 P.3d 980.

Wood argued Sections 45-2-301 and -302, MCA, set forth "two theories of criminal culpability." SER-50, quoting *Kline*, ¶14. Two theories of culpability for one single offense is Wood's position in this Court, (as well as all courts below). Her argument that *Tower* concerns pleading rather than sufficiency, SER-46-47, is equally consistent: each theory must be supported by sufficient evidence before it may be submitted, and when one is not, the resulting insufficiency ruling is an acquittal of the offense. *Wood I* agreed that *Tower* addressed pleading, not the verdict-form question, 1-ER-62-63, ¶¶34-35. *Wood I* did not reject *Tower*'s description of accountability as a non-offense, it reaffirmed it. 1-ER-68, ¶40.

It is Appellees whose position has moved with their litigating needs. At trial, accountability was "part and parcel" of the one charge. 5-ER-995:11-13; 5-ER-996:22-25. In *Wood I*, it was "not … a substantive separate offense." 4-ER-906. On remand, for purposes of admitting former testimony, Wood "remains charged with the same offense." 2-ER-257. Before this Court, accountability is a "discrete bas[is] of liability" and a different offense under *Blockburger*. Appellees' Brief, ECF Dkt. 6.1, pages 37-40. Appellees do not substantively respond to Wood's judicial estoppel argument. Appellant Brief, ECF Dkt. 3.1, page 44 note 11 citing *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001).

**i. Retrial Would Give the State a Second Opportunity to Supply the Proof it Failed to Muster at the First Trial.**

Appellees argue retrial serves the policies of the Double Jeopardy Clause because "[t]he facts underlying the acquittal for accountability are no longer at issue and will not be relitigated." Appellees' Brief, ECF Dkt. 6.1, page 27; *See Also, Id.* pages 45-46. The record shows otherwise. In *Wood I*, the State argued the accountability theory was supported by the gun purchase, the TracFone evidence, the 911 call, and Wood's motive, the same evidence it offered to prove she fired the shot. 4-ER-908-10; 1-ER-71, ¶43. On retrial, the State will offer that same evidence again, to the same end, for the same offense, on the same Amended Information. 5-ER-1036-38. That is a second trial "for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks*, 437 U.S. at 11.

The State had one fair opportunity to prove Wood committed deliberate homicide. It chose to submit an unsupported theory "as an option if the jury could not unanimously find the State's evidence sufficient to support its primary theory." 1-ER-77, ¶50. *United States v. Tateo*, 377 U.S. 463 (1964), on which Appellees now rely, (Appellees' Brief, ECF Dkt. 6.1, page 46), concerns retrial after trial error. *Burks* drew the line between reversals for trial error, the setting of *Tateo*, and reversals for insufficiency. *Burks,* 437 U.S. at 14-16. The societal interest in retrial

*Tateo* identifies does not apply when, as here, an appellate court has held the State's proof insufficient.

## III. Conclusion.

Appellees have conceded that Wood was acquitted on appeal and that she was charged with one offense. Under *Burks*, *Sanabria*, and *Smith*, those concessions are dispositive to the issue presented by this appeal. Wood respectfully requests this Court reverse the judgment of the district court and remand with instructions to grant the petition under 28 U.S.C. § 2241, bar the State of Montana from retrying her in Montana Twentieth Judicial District Court Cause No. DC-19-07, and order her discharged from custody and all other restraints on her liberty.

Because retrial is set to begin March 19, 2027, Wood respectfully requests a decision before that date.

Respectfully submitted this 14th day of October, 2026.

/s/ Shandor S. Badaruddin

______________________________

Shandor S. Badaruddin

*Attorney for Appellant Wood*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-4519

I am the attorney or self-represented party.

**This brief contains** 6,523 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
- ☐ it is a joint brief submitted by separately represented parties.
- ☐ a party or parties are filing a single brief in response to multiple briefs.
- ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated ______.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Shandor S. Badaruddin **Date** 10/14/26
*(use "s/[typed name]" to sign electronically-filed documents)*